### OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Impeachment, Opinion of the Justices. *Executive Council.*

The Justices of the Supreme Judicial Court considered and answered questions submitted to them in an order by the House of Representatives relating to its powers as the grand inquest under Part II, c. 1, § 2, art. 8, and § 3, art. 6, of the Constitution, where the order was accompanied by documents showing that the House had under consideration the exercise of such powers, although not by anything comparable to a pending legislative bill, such as proposed articles of impeachment.

A member of the Executive Council is an officer of the Commonwealth subject to impeachment within the meaning of Part II, c. 1, § 2, art. 8, of the Constitution.

The words in Part II, c. 1, § 2, art. 8, of the Constitution, "misconduct and mal-administration in their offices," as applied to a member of the Executive Council, include such acts or omissions of the councillor while holding that office as can be said reasonably to render him unfit to continue to hold the office.

It is not necessary that there be both misconduct and maladministration in order to constitute a ground of impeachment of a member of the Executive Council under Part II, c. 1, § 2, art. 8, of the Constitution.

Acts or omissions of a member of the Executive Council, otherwise constituting grounds for impeachment, constitute grounds therefor although such acts or omissions occurred during a term of office prior to the term which he is serving when the impeachment is made by the House of Representatives.

On March 25, 1941, the House of Representatives adopted, and on March 28 transmitted to the Justices of the Supreme Judicial Court, the following order:

WHEREAS, There are pending before a special committee of the House of Representatives, appointed pursuant to an order of said House adopted January 9, 1941, the Intermediate Report (House, No. 2) and the Final Report (House, No. 1000) of the Special Commission established under chapter 12 of the Resolves of 1939, commonly known as the Pardon and Parole Commission, copies of said order and of said reports being submitted herewith; and

WHEREAS, Said reports contain numerous findings and statements relative to acts of a present member of the Council provided for in Article I of Section III of Chapter II of Part the Second of the Constitution of the Commonwealth, who has held the office of Councillor continuously since January, nineteen hundred and thirty-three, by re-election for consecutive terms, together with the suggestion of said Special Commission, on page 37 of its said Final Report and the recommendation of one of its members, on page 230 thereof, that impeachment proceedings be instituted against said Councillor for misconduct and mal-administration in his said office alleged to have occurred during terms prior to his present term; and

WHEREAS, Grave doubt exists whether or not Article VIII of Section II of Chapter I of Part the Second of the Constitution of the Commonwealth and Article VI of Section III of said chapter apply to a Councillor, what acts and omissions are included by the words "misconduct and mal-administration in their offices" in said Article VIII, whether or not both "misconduct" and "mal-administration" are necessary to impeach a Councillor and whether or not said Articles VIII and VI apply to the acts and omissions of a Councillor during any term of office prior to his present term; and

WHEREAS, By reason of the foregoing circumstances, a solemn occasion exists, involving important questions of law, as to which it is necessary that the House of Representatives be advised by the Justices of the Supreme Judicial Court before proceeding further as the grand inquest of the Commonwealth; therefore be it

ORDERED, That the Opinions of the Honorable the Justices of the Supreme Judicial Court be required by the House of Representatives upon the following important questions of law:

1. Are members of the Council officers of the Commonwealth, within the meaning of said Article VIII?

2. Do the words "misconduct and mal-administration in their offices", as used in said Article VIII, include acts or omissions: —

(*a*) Occurring in the administration of the office of Councillor?

(*b*) Occurring otherwise than in the administration of said office, but affecting the administration thereof?

(*c*) Not relating to the administration of said office?

(*d*) Inconsistent with holding said office or constituting violation of the oath of office?

3. Does the word "misconduct", as used in said Article VIII, include acts of misconduct which are in no way related to the office held or the duties of said office?

4. Is misconduct, or misconduct in office, or mal-administration in office, a ground for impeachment of a Councillor under said Articles VIII and VI, or must both misconduct and mal-administration occur to constitute a ground for such impeachment?

5. Do acts or omissions of a Councillor otherwise constituting grounds for impeachment constitute grounds therefor, if such acts or omissions occurred during a term of office prior to the term which he is serving when the impeachment is made by the House of Representatives?

On April 4, 1941, the Justices returned the following answers, which were read in the House on April 7:

To The Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House of Representatives on March 25, 1941, and transmitted to the Justices on March 28, 1941, a copy of which is hereto annexed. The questions relate to the constitutional powers of the House as the grand inquest of the Commonwealth with respect to making an impeachment of a present member of the Council, "who has held the office of Councillor continuously since January, nineteen hundred and thirty-three, by re-election for consecutive terms."

The matter is pending before the House upon two reports of a special commission established under chapter 12 of the Resolves of 1939, which contain numerous findings and

statements relative to the acts of said councillor, and one of which suggests — and on the part of one member of the commission recommends — impeachment proceedings against said councillor. By an order of the House adopted January 9, 1941, provision was made for the appointment of a special committee for the purpose of considering, among other things, so much of said report as relates to such impeachment proceedings, and this matter is now before the special committee appointed pursuant to such order. We are not advised that this special committee has made any report upon the matter so referred to it, or that the House has taken any further action with respect thereto apart from the adoption of the present order wherein it is recited that "a solemn occasion exists, involving important questions of law, as to which it is necessary that the House of Representatives be advised by the Justices of the Supreme Judicial Court before proceeding further as the grand inquest of the Commonwealth."

The power of the House of Representatives as the grand inquest of the Commonwealth differs materially from its power as one branch of the General Court acting in matters of legislation. And the questions submitted relate to the power of the House in proceeding further as such grand inquest. Consequently, notwithstanding the absence of anything — such as proposed articles of impeachment — in any degree comparable to a bill pending before the House when acting in a matter of legislation to which the questions submitted are directed, we treat the order on the basis that the House has under consideration the exercise of its power to make an impeachment of the councillor referred to, and that an opinion is desired, on the questions of law submitted, "respecting pending matters, in order that assistance may be gained in the performance of present duties." *Opinion of the Justices,* 216 Mass. 605; 301 Mass. 615, 616–617. Compare *Answer of the Justices,* 148 Mass. 623, 626; 217 Mass. 607. See *Opinion of the Justices,* 167 Mass. 599; 204 Mass. 616, 617–618; 208 Mass. 610; 239 Mass. 603; 243 Mass. 605.

The constitutional provisions relating to impeachment

are these: Constitution, Part II, c. 1, § 2, art. 8: "The senate shall be a court with full authority to hear and determine all impeachments made by the house of representatives, against any officer or officers of the commonwealth, for misconduct and mal-administration in their offices. But previous to the trial of every impeachment the members of the senate shall respectively be sworn, truly and impartially to try and determine the charge in question, according to evidence. Their judgment, however shall not extend further than to removal from office and disqualification to hold or enjoy any place of honor, trust, or profit, under this commonwealth: but the party so convicted, shall be, nevertheless, liable to indictment, trial, judgment, and punishment, according to the laws of the land"; § 3, art. 6: "The house of representatives shall be the grand inquest of this commonwealth; and all impeachments made by them, shall be heard and tried by the senate."

The questions submitted call for an interpretation of said c. 1, § 2, art. 8, as to whether a councillor is an "officer . . . of the commonwealth" within the meaning of this article so as to be subject to impeachment upon adequate grounds, and, if he is subject to impeachment, as to the nature of the grounds for impeachment described in the article with respect to "any officer or officers of the commonwealth" as "misconduct and mal-administration in their offices."

The meaning of the words "any officer or officers of the commonwealth" in said art. 8 was considered in *Opinion of the Justices*, 167 Mass. 599. It was there said (pages 599–600): "By virtue of this provision, no one can be impeached except officers of the Commonwealth . . . . There are several classes of civil officers within the Commonwealth; for example, town or city officers, county officers, officers of districts, and State officers. In a certain sense, all of these officers may be deemed to be officers of the Commonwealth, and it is possible accordingly to take the view that all are subject to impeachment. But in our opinion this provision of the Constitution was not intended to include all civil officers of every grade within the Commonwealth. On the one hand, it seems to us that the various officers of cities

or towns do not fall within the class of officers of the Commonwealth, in the sense in which these words are used in this provision of the Constitution. On the other hand, officers elected by the people at large, or provided for in the Constitution for the administration of matters of general or State concern, are subject to impeachment."

In accordance with this interpretation the Justices reached the conclusion that it was "the better construction of the constitutional provision . . . that county commissioners are not subject to impeachment as officers of the Commonwealth," saying that the "office of county commissioner is created by statute, and the Legislature can by statute determine in what manner an incumbent may be removed from office. They have some duties or functions which concern the people of the State at large. But it seems to us that they are essentially a local body. They are elected by the people of a county, and their duties relate chiefly to the affairs and interests of the county. Some of their duties are much like duties performed by selectmen, or by a mayor and aldermen, except that their jurisdiction extends over the whole county."

This interpretation of said art. 8 was followed by the court in *Attorney General* v. *Tufts*, 239 Mass. 458, 478–481, and in *Attorney General* v. *Pelletier*, 240 Mass. 264, 294. In each of these cases it was held that a district attorney was not within the classification of officers removable by impeachment, since such officer was neither "elected by the people at large" nor "provided for in the Constitution for the administration of matters of general or State concern."

In accordance with this interpretation of said art. 8 a councillor is an officer of the Commonwealth subject to impeachment. The office of councillor is "provided for in the Constitution for the administration of matters of general or State concern." The method of election of a councillor is prescribed by the Constitution, his tenure is fixed thereby and numerous duties and powers are thereby conferred upon the Council. See, especially, Constitution, Part II, c. 2, § 3 (also c. 1, § 2, art. 1). Amendments, arts.

10, 13, 16, 25, 64. "The Executive Council exists for the purpose of 'advising the governor in the executive part of government.' Constitution, Part II, c. 2, § 3, art. 1. It is 'part of the executive branch of the government of the Commonwealth.' *Murphy* v. *Casey*, 300 Mass. 232, 235." *Bigney* v. *Secretary of the Commonwealth*, 301 Mass. 107, 109. In *Opinion of the Justices*, 190 Mass. 616, 618, it was said that the "Constitution recognizes two kinds of executive business which may come before the Council: one, that which is to be done by the Governor and Council acting together as an executive board, and the other, business to be done by the Governor, acting under the responsibility of his office as supreme executive magistrate, by and with the advice and consent of the Council," and duties of the Council of the two classes as fixed by the Constitution are described. See also *Answer of the Justices*, 214 Mass. 602; *Juggins* v. *Executive Council*, 257 Mass. 386; *Scullin* v. *Cities Service Oil Co.* 304 Mass. 75. And it was said in *Answer of the Justices*, 214 Mass. 602, 604: "Nowhere in the Constitution are any duties conferred upon the Council, except such as they are to perform in conjunction with the Governor, either approving or disapproving his acts or joining with him as an executive board." It is clear that the duties so described conferred upon the Council relate to the "administration of matters of general or State concern." Moreover, the nature of the duties of a councillor as relating to matters of general or State concern was to some extent recognized in *Bigney* v. *Secretary of the Commonwealth*, 301 Mass. 107, 109, where it was said that there "is nothing inherent in the nature of the duties of the office of councillor which as matter of law . . . requires that a councillor be a resident or inhabitant of the councillor district by which he is elected." And we find nothing in the Constitution or in decided cases or opinions of the justices indicating that such a constitutional officer as a councillor is not an officer of the Commonwealth subject to impeachment by reason of the fact that he is elected by the people of a district and not by the people at large. See Amendments, art. 16. Compare Constitution, Part II, c. 1, § 2, art. 1. Amend-

ments, art. 13. It follows that it is within the power of the House of Representatives to make an impeachment upon the grounds stated in said art. 8 against a councillor to be "heard and tried by the senate." Constitution, Part II, c. 1, § 3, art. 6.

The grounds as provided by said art. 8 upon which "any officer or officers of the commonwealth" may be impeached are "misconduct and mal-administration in their offices." The questions submitted — other than the question whether a councillor is an officer of the Commonwealth subject to impeachment — relate to the meaning of these words in their general application. This constitutional provision, with its related provision in Part II, c. 1, § 3, art. 6, is to be "given a construction adapted to carry into effect its purpose." *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 524. *Mount Washington* v. *Cook*, 288 Mass. 67, 70. *Opinion of the Justices*, 297 Mass. 577, 580. These provisions were contained in the Constitution when it was first adopted and have not been changed since. And the Constitution "was written to be understood by the voters to whom it was submitted for approval." *Yont* v. *Secretary of the Commonwealth*, 275 Mass. 365, 366. *Bigney* v. *Secretary of the Commonwealth*, 301 Mass. 107, 111. Its words and phrases are to be interpreted "in the sense most obvious to the common understanding, because they were proposed for adoption by all the people entitled to vote." *Opinion of the Justices*, 243 Mass. 605, 607. See also *Attorney General* v. *Methuen*, 236 Mass. 564, 573; *Opinion of the Justices*, 262 Mass. 603, 605; 266 Mass. 583, 588; *Bigney* v. *Secretary of the Commonwealth*, 301 Mass. 107, 111. Such words and phrases "are chosen to express generic ideas, and not nice shades of distinction." *Attorney General* v. *Methuen*, 236 Mass. 564, 573. They are "not to be given a constricted meaning." *Opinion of the Justices*, 262 Mass. 603, 605; 297 Mass. 577, 580; *ante*, 601, 613–614.

The primary purpose of the constitutional provisions relating to impeachment was to provide a method of removing persons whose "misconduct and mal-administration in their offices" had demonstrated their unfitness to continue

in office. The two words "misconduct" and "mal-adminis-
tration" convey distinct ideas to the mind though the same
conduct may often fall within both words. They do not
describe, however, two elements of a single wrongdoing.
Conduct of either description is a ground for impeachment.
But it must occur "in" the office of the officer to be re-
moved. Yet there is clear recognition of the fact that "mis-
conduct" that does not amount to "mal-administration"
may be a ground for impeachment. The word "miscon-
duct" cannot be disregarded as surplusage. See *Yont* v.
*Secretary of the Commonwealth*, 275 Mass. 365, 368. In our
opinion, therefore, in order to carry into effect the obvious
purpose of the provisions relating to impeachment, any
"misconduct" — or, of course, any maladministration —
of an officer of the Commonwealth while holding his office
that can be said reasonably to render him unfit to continue
to hold the office is such misconduct "in" his office as con-
stitutes ground for impeachment. A similar conclusion was
reached in *Attorney General* v. *Tufts*, 239 Mass. 458, 482,
under a statutory provision for removal of officers not sub-
ject to impeachment, somewhat broader in terms but de-
signed for a like purpose.

It appears from the order that the questions submitted
relate to "a present member of the Council . . . who has
held the office of Councillor continuously since January,
nineteen hundred and thirty-three, by re-election for con-
secutive terms," and one of these questions is: "Do acts
or omissions of a Councillor otherwise constituting grounds
for impeachment constitute grounds therefor, if such acts
or omissions occurred during a term of office prior to the
term which he is serving when the impeachment is made
by the House of Representatives?" — obviously referring
to the situation described in the order.

It cannot be doubted that in this situation misconduct or
maladministration of a councillor in a previous term may
be of such a nature that it can be said reasonably to render
him unfit to continue to hold the office of councillor during
his present term. The obvious purpose of the provisions
for impeachment would fail to a considerable degree if

such misconduct or maladministration in a previous term was not a ground for impeachment. And such misconduct or maladministration of a councillor, in our opinion, would occur "in" his office, within the meaning of the Constitution, notwithstanding the intervention of one or more re-elections to the office of councillor. The office during his previous terms was the same constitutional office as that which he now holds. The constitutional duties of the office remain unchanged. Doubtless the election of a new Council and the qualification of its members, re-elected or newly elected, result in a break in the performance of these duties. And doubtless, technically, the life of a Council is the two-year period fixed by the Constitution as amended. See *Opinion of the Justices*, 239 Mass. 603. See also *Answer of the Justices*, 290 Mass. 601. But "in the sense most obvious to the common understanding" a councillor by successive elections continues to hold the same office. There is a continuity somewhat similar to that in the case of the office of district attorney, recognized in *Attorney General* v. *Tufts*, 239 Mass. 458, 482, where it was said of a district attorney, who was his own successor by a second election, that in "substance and effect it is a continuous service." See also *Attorney General* v. *Pelletier*, 240 Mass. 264, 300.

. Moreover, the permissible penalty goes beyond removal from office and disqualification to hold the office during the remainder of the term in which the misconduct or maladministration occurs, indicating that, even if an impeachment of an officer can be made only while he is in office, such impeachment does not relate solely to the existing term of office. Furthermore, the probable practical difficulty of discovering misconduct and maladministration and trying an impeachment therefor during the term of office in which they occurred — particularly where, as at the time the Constitution was adopted, the term was only one year — furnishes an additional reason for concluding that the provisions for impeachment were not intended to be interpreted to limit such proceedings so narrowly. In *Attorney General* v. *Tufts*, 239 Mass. 458, 482, and in *Attorney General* v. *Pelletier*, 240 Mass. 264, 300, it was held

that the conduct of a district attorney during a previous term of office could be considered in determining whether such district attorney should be removed from office under a statute providing for removal of such an officer. We think that the constitutional provisions relating to impeachment should be interpreted in like manner.

It follows that the questions submitted are to be answered as follows.

We answer question 1: "Yes."

We answer questions 2 and 3: The words "misconduct and mal-administration in their offices," used in art. 8, and the word "misconduct" as used therein include acts or omissions of a councillor while holding the office of councillor that can be said reasonably to render him unfit to continue to hold the office. In view of the somewhat indefinite nature of some of the words used in these questions, we think this answer is a more accurate statement of the law than can be made in the terms used in the question.

We answer question 4: It is not necessary that there be both misconduct and maladministration in order to constitute a ground for impeachment.

We answer question 5: "Yes."

> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.
> STANLEY E. QUA.
> ARTHUR W. DOLAN.
> LOUIS S. COX.
> JAMES J. RONAN.