Breitel, J.
Floyd Sarisohn, elected as a Suffolk County
District Court Judge for a term commencing January 1, 1964, appeals from an order of the Appellate Division, Second Department, entered May 15, 1967. That court, pursuant to-section 132 of the Code of Criminal Procedure, removed him *41 from office and prohibited him from thereafter holding any judicial office, appointive or elective (27 A D 2d 466, Per Curiam).
The removal followed a series of intermediate motions, appellate applications to this court, and a full hearing before the Appellate Division. Some, and one of the more serious, of the charges sustained involved conduct by Judge Sabisohn before he was elected to the District Court and while he was serving as a town Justice of the Peace. The Appellate Division, after conducting the proceedings with meticulous fairness, dismissed a number of other charges and in view of the dismissal there will be no occasion to discuss them.
Appellant appeals as of right, and a preliminary question is whether an appeal lies. In Matter of Droege (197 N. Y. 44, 48-50), a like proceeding affecting a New York City Magistrate, it was held that an appeal would not lie on the ground that a removal proceeding was not a special proceeding within the statutes then regulating appeals to this court. Since then, however, the practice statutes have been broadened with the expressed purpose of embracing within an “ action or special proceeding” any civil judicial proceeding (CPLR 103, subd. [b]; 105, subd. [d]; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 103.02-103.06, 105.05; cf. Matter of Friedman, 19 A D 2d 120, 122-124, app. dsmd. 375 U. S. 10, decided before CPLR was effective). The statute is sufficient to broaden the basis for appealability because the Constitution does not contain any restrictive definition of an action or special proceeding (art. VI, § 3). Moreover, there is some hypothetical basis for at least a threshold review in removal proceedings of this nature even when full reviewability is not available (Matter of Droege, supra, p. 52; Matter of Friedman, supra, pp. 122-123). Consequently, it is concluded that an appeal lies.
Of course, appealability does not mean that the reviewability of the issues is broad. On the contrary, the scope of review is narrow. As this court observed in the Droege case (supra), the Appellate Division “is vested with the power of removal ‘ for cause. ’ Neither the Constitution nor the statutes have attempted to define what that ‘ cause ’ shall be. If this court should undertake to decide upon the sufficiency or insufficiency of a ‘ cause ’ passed upon by the Appellate Division in such a *42 case it would be an assumption of power by this court, which the Constitution and the statutes have granted exclusively to the Appellate Divisions” (p. 51). It also observed, however, that if the court had power to review, its power would extend to seeing if there was “ a real and substantial cause as distinguished from a futile or frivolous prosecution, and when once that question is decided in the affirmative it is the end of the appeal” (p. 52). This is recognizable as roughly the equivalent to the substantial evidence rule in administrative law.
It is now appropriate to turn to the first of the charges sustained. This charge accused appellant of having advised and consulted with a prostitute on how she should conduct herself in a pending criminal prosecution against her in another court and how she could with impunity continue to practice her illicit trade. The events occurred while appellant was still a Justice of the Peace and, although the prostitute was a former client, he told her that he was not then advising her as her lawyer. As a Justice of the Peace he was entitled to practice law, and this is the basis for his self-contradictory assertion that his conversations with the prostitute were privileged as between attorney and client. The sole source of the evidence consists of telephone conversations between appellant and the prostitute, all of which were intercepted under eavesdropping orders obtained to survey the telephone of the prostitute.
Under the recent holding in Berger v. New York (388 U. S. 41) the statute under which the eavesdropping orders were obtained was condemned as unconstitutional. It has been a matter of considerable concern whether any part of the statute survives as to telephone interceptions away from the premises as distinguished from trespassory intrusions by electronic listening devices. (See Berger v. New York, 388 U. S. 41, 51-52, 64 [Douglas, J., concurring], 81-82 [Black, J., dissenting].)
But, in any event, the orders in this case were not obtained in accordance with the requirements of the statute. The standard-form affidavits submitted to the court were concededly insufficient in that they failed to specify facts “ on which the Judge exercising a discretion could act” (People v. McCall, 17 N Y 2d 152, 157 [which also dealt with the sufficiency of the proof supplied for an order issued under the applicable statute, Code Crim. Pro., § 813-a]; compare the proof in People v. *43 Kaiser, decided herewith). It is true that the,police officer who procured the orders on the several occasions made supplementary oral statements under oath to the issuing Justices. These statements, however, were not recorded and, hence, did not become ‘ ‘ part of the record basis of the order ’ ’ (People v. McCall, 17 N Y 2d 152, 158). The McCall case indicated that “as in the case of search warrants, there is a significant need for an adequate factual basis on which the Judge will be able to decide whether or not the order or warrant [pursuant to § 813-a] will issue ” (p. 159). In another but analogous context this court has held that oral testimony, taken pursuant to section 794 in support of the grant of a search warrant, “ should ” be “recorded” (People v. Schnitzler, 18 N Y 2d 457, 461). On this basis alone, it is concluded, without the necessity of reaching the issue raised under the Berger case (supra), that the wiretaps in this ease were illegal and, therefore, the evidence obtained therefrom unusable.
The first charge is thus undermined if appellant has standing to object to the illegality of the wiretaps. True, appellant was not the subscriber but he was the other conversationalist.
In Goldstein v. United States (316 U. S. 114, 120) a similar issue arose in a Federal prosecution and the court noted that constitutional limitations against search and seizure under the Fourth Amendment were not involved. It held, however, that the intercepted telephone conversations would be excludable as in violation of section 605 of the Federal Communications Act, but not as to nonparties to the conversations. (See, to the same effect, United States ex rel. Ross v. LaVallee, 341 F. 2d 823, 824 [2d Cir., 1965], cert. den. 382 U. S. 867.) And in United States v. Tane (329 F. 2d 848, 852) the Second Circuit held, after citing the Goldstein case, that “ The word ‘ sender ’ is perhaps more appropriately ascribed to one who starts a telegram or letter on its way. In a telephone conversation, the caller and the receiver alternately exchange information, and both parties are senders within the meaning of § 605. See United States v. Polakoff, 112 F. 2d 888, 889 (2 Cir. 1940), cert, denied 311 U. S. 653, 61 S. Ct. 41, 85 L. Ed. 418 (1940). Cf. Rathbun v. United States, 355 U. S. 107, 113, 78 S. Ct. 161, 165, 2 L. Ed. 2d 134 (1957), where Mr. Justice Frankfurter’s dissent states explicitly the implicit basis of the majority opinion — that the Court read *44 * “ sender ” to mean one of the parties to the communication, whether sender or receiver.’ ”
It would serve no good purpose and only introduce hopeless confusion if the test for standing to object were different under the State statute, assuming that it has survived the onslaught of the ruling in the Berger case (supra) from that applied to violations of the Federal statute. To be sure, People v. McDonnell (18 N Y 2d 509) does not require such identity of standards, although appellant so argues. In the McDonnell case it was held that defendant had standing to object to an illegal wiretapping because he was charged with conspiring to have the telephone in another’s name when in fact it was for his benefit. On this basis the case may be distinguished from this one in which there is no claim that the telephone was other than the prostitute’s.
On the other hand, no ruling in this State precludes recognizing standing in the other party to a telephone conversation to object to its admission on the ground of illegality. Consequently, the test should be the same as that in the Federal cases, especially as it involves an instrumentality subject to Federal regulation. Moreover, it would be a very tenuous distinction which would respect the privacy of the telephone subscriber but not of the person speaking to him (regardless of who telephoned the other) over a private telephone believed to be secure from unlawful interception.
On this analysis the first charge cannot be sustained. The other issues as to the status in which appellant advised the prostitute and when the advice was rendered need not be reached.
The next charge sustained, denominated the second charge, involves appellant’s official conduct as a District Court Judge. In an action to recover $107 for property damage arising from an automobile collision, appellant caused the defendant, a woman, to be confined to a cell for an interval during a day when she refused to disclose the name of the owner of the automobile involved in the collision. She had been mistakenly sued because the automobile, of unknown ownership or operation, had been driven out of her driveway, evidently by a guest. She was not a witness and had not been sworn. It was charged that appellant sought to coerce the disclosure from her and sum *45 marily directed the court officer to take her into custody, which appellant admits, and to place her in a cell, which he denies. The woman and a court attache testified to the incarceration and the direction by appellant, thus contradicting so much of appellant’s testimony as denied giving the direction. There is substantial evidence, therefore, to support the charge and it was reasonable for the Appellate Division to consider such highhanded and oppressive conduct as a ground for imposing a sanction.
The Appellate Division also sustained the charge of imposing grossly excessive bail. In the case of an alleged burglar, appellant fixed bail in the aggregate amount of $1,500,000, with the avowed purpose of preventing the criminal defendant from obtaining his freedom. This charge, denominated the fourth charge, arose from events which occurred while appellant was a District Court Judge. Although the court sustained the charge, it also held that it did not consider the conduct sufficient cause for removal. Eventually, the alleged burglar was released on $7,500 bail fixed in another court. Since the Appellate Division did not consider this charge cause for removal it is unnecessary to discuss it at length, except to note that the charge was supported by substantial evidence and was all but conceded.
The Appellate Division sustained a charge, denominated seventh, accusing appellant of injecting himself improperly into the acceptance of a plea of guilty before the return day of a traffic summons, without having been assigned to the court in which the summons was returnable and without having before him the counterpart papers customary in disposing of a traffic summons. The defendant was a newspaperman, a friend well known to appellant, and one who had had occasion to write articles, concerning the appellant. A fine of $10, suspended, for speeding as a first offense, was imposed and the defendant’s license indorsed with the conviction.
These last events occurred while appellant was a District Court Judge and during a period when, according to a considerable amount of testimony offered by appellant, there was a loose practice among the District Court Judges in handling traffic summonses in advance of the return days to accommodate defendants who would find it inconvenient to appear in court on *46 the return days. Be that as it may, under the rule in the Droege case (197 N. Y. 44, supra) the matter of cause is one for the determination of the Appellate Division. If this were the only charge involved, however, upon which a grave sanction was imposed, a serious question of the rationality of the disposition would be presented.
The next charge sustained, denominated ninth, involves conduct while appellant was a Justice of the Peace. In September, 1962 appellant instructed the court attaché to obliterate docket entries directing the entry of a default judgment against the tenant in a landlord-tenant summary proceeding, without notice to the landlord’s lawyer, on a telephoned statement by the tenant’s lawyer that there had been no notice of the trial date. The witnesses and appellant testified that on no view of the matter should the entries have been obliterated but only can-celled. Significantly, appellant testified in contradiction to the court witnesses that he had not directed the obliteration, and in contradiction of an affidavit he himself had made in an official investigation of the occurrence. The charge was supported, of course, by substantial, if not overwhelming, evidence. Appellant, however, raises the question whether conduct prior to his election to the District Court may be considered.
As a general rule conduct of officials prior to their incumbency may not base disciplinary actions against them (see, generally, 67 C. J. S., Officers, § 60, subd. c, which notes, however, that an exception exists as to conduct that may result in debarment from future office, the situation here under Code Crim. Pro., § 132). Moreover, it has been held that subsequent election to office does not bar charges on undisclosed prior conduct affecting general character and fitness for office (see Matter of Abare v. Hatch, 21 A D 2d 84, 86; Matter of Newman v. Strobel, 236 App. Div. 371, 373-374). Nor is it material that the cited cases involved conduct during prior terms for the same office when, as here, the prior office is of the same generic character and carries judicial responsibility. It would be an unseemly and unsound distinction with respect to a matter affecting general character and fitness to immunize a Judge from his prior misconduct as a Judge of lesser or higher rank.
The final charges, denominated tenth and sixteenth, sustained by the Appellate Division, are based on appellant’s conduct as *47 a District Court Judge in displaying overt prejudice against an attorney of record in two cases before him and in bringing untoward pressure to bear upon trial counsel in abusive and improper language. Appellant sought to compel trial counsel in chambers to stipulate to the amount of property damage in a tort case and, when he refused, stated:
“ Look, if you don’t stipulate to the property damage, and if you don’t accomplish something on cross examining that expert, I’m going to let that jury know that you are the person responsible for delaying this trial ’ ’
and
“ Listen, when we go out there I’m going to screw you every way I can short of reversible error.”
In another case, in connection with a calendar dispute, appellant told another trial counsel acting for the same attorney of record that he had it “in” for the office of the attorney of record and that he had had it “ in ” for that office for a long time. Appellant admitted to having these verbal altercations but denied the form of the language attributed and contended that his fairness was shown by the fact that the aggrieved lawyers had won both their cases. The Appellate Division held that appellant’s conduct showed “ a pattern of unjudicial conduct on both occasions.” The evidence supports the charges substantially and is well within the range to support a finding of cause for the imposition of sanctions.
Involved in the hearing below was appellant’s claim of his privilege against self incrimination and the attorney-client privilege. The court placed great stress on his assertion of privilege and relied on holdings in this court and the United States Supreme Court which distinguish between the availability and the effects of a claim of privilege against self incrimination by a public official in a disciplinary proceeding and the effects of such claims in any subsequent criminal proceeding against him (Matter of Gardner v. Broderick, 20 N Y 2d 227, and Garrity v. New Jersey, 385 U. S. 493; cf. Spevack v. Klein, 385 U. S. 511). These claims of privilege arose, however, only in connection with the first charge and, hence, it is no longer necessary to consider them if the view expressed as to the first charge is adopted. If, however, the first charge survives, then, indeed, these issues become material, and for the reasons stated *48 in the Gardner case {supra) the claim of privilege with regard to matters otherwise available as charges for prior misconduct Avhile holding a judicial office might properly have been considered cause for removal by the Appellate Division.
Appellant also argues that there is an absence of standards for removal; that the court sat as charge-maker, prosecutor, and trier of the facts; and that the court had previously demonstrated prejudice against appellant, for Avhich reason it should not have tried the matter. These are contentions that go to the traditional nature of removal proceedings and at this late date do not merit discussion.
Abstracting from the case the first charge (involving the dealings with the prostitute) and the claims of privilege associated with that charge would take away a substantial part of the basis upon which the Appellate Division acted. Consequently, the matter should be remanded to the Appellate Division to reconsider this aspect of the proceedings, and, if the first charge cannot be established by proper evidence, the sanction to be imposed for the remaining charges sustained.
Accordingly, the order of the Appellate Division should be reversed; the proceeding remanded to that court; the first charge should be dismissed by that court unless other untainted evidence can be supplied to support it; and that, if the first charge be dismissed, the Appellate Division should reconsider the disposition to be made on the basis of the remaining charges.
Opinion by Judge Breitel. All concur, Chief Judge Fuld as to the first charge on the additional ground that, in consequence of the decision in Berger v. New York (388 U. S. 41), section 813-a of the Code of Criminal Procedure is unconstitutional in its entirety “ on its face ” (p. 55); that no authorization existed for an ex parte order permitting eavesdropping, i.e., wiretapping; and that the conversations intercepted by such wiretapping should not have been received in evidence. (See dissenting opn., People v. Kaiser, 21 N Y 2d 86, also decided today.) Judge Bergan taking no part.
Order reversed and matter remitted' to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.