[No. 45991.   En Banc.   March 30, 1979.]

GEORGE V. JANOVICH, *Appellant,* v. DON
HERRON, ET AL, *Respondents.*

Petrich, Hester & Robson, by Monte E. Hester, for appellant.

Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, by Ronald B. Leighton, for respondents.

UTTER, C.J.—Appellant George V. Janovich raises statutory and constitutional challenges to the procedures followed by citizens of Pierce County in proposing an election to recall him from the position he now holds. The procedures are free of substantial defect and we affirm the trial court's dismissal of the appellant's suit.

On December 8, 1978, Janovich, the elected sheriff of Pierce County, was indicted by a federal grand jury for

alleged violations of federal anti-racketeering statutes. The indictment was based upon the filing of a criminal complaint, on November 28, 1978, by the United States Attorney in the United States District Court for the Western District of Washington. Trial on the charges presented in the indictment, originally set for hearing in Seattle on March 19, 1979, has now been reset for hearing in San Francisco, California.

On December 18, 1978, respondent Evan McCord filed a demand for recall election, requesting an election to recall Sheriff Janovich. The demand for recall election repeated the basic allegations of the federal criminal complaint and cited certain overt acts found in it. The specification of the acts in the demand for recall election was copied substantially from the criminal complaint. On December 29, 1978, the Pierce County Prosecuting Attorney, respondent Don Herron, determined that certain of the charges made in the demand for recall election were sufficient to compel a recall election. This opinion was communicated to McCord and Janovich. A ballot synopsis was prepared and incorporated into petitions for recall.

On January 3, 1979, Janovich filed the present action, contending the demand for recall election was legally deficient and that the defendants have otherwise failed to comply with the mandate of RCW 29.82, governing procedures for the recall. Additionally, Janovich alleged the recall election would violate certain of his constitutional rights because the demand for political discussion generated thereby could not be met. The impediment cited by Janovich was an alleged federal court order that he not publically discuss the criminal case. Janovich asked that the procedures thus far completed be declared invalid, and that any recall election be postponed until criminal procedures have been completed. On January 24, 1979, the trial court dismissed the suit with prejudice, denying Janovich the relief he requested. Janovich appealed.

## THE RECALL PROCEDURE

The authority of the people to recall their elected officials is rooted in article 1, sections 33 and 34 of the constitution, adopted by amendment in 1912. Section 33 declares the power of recall and provides that a recall election shall be held upon filing of a petition by voters "reciting" that the officer to be recalled "has committed some act or acts of malfeasance or misfeasance while in office," or has violated the oath of his office. Section 34 mandates legislative provisions to carry out the authority asserted in section 33. The sections together indicate the number of petition signatories requisite to setting an election. For discussion of the legislative history of the 1912 amendment and the historical context of its adoption, *see* Cohen, *Recall in Washington: A Time for Reform,* 50 Wash. L. Rev. 29, 32–39 (1974); Comment, *Recall of Public Officers: Discretionary Acts Cannot be a Sufficient Basis for Recall,* 48 Wash. L. Rev. 503, 505 n.6 (1973).

The legislative scheme adopted to satisfy the constitutional mandate is found at RCW 29.82. The procedure set out in that chapter is initiated by the filing of a charge, here titled "Demand for Recall Election", against the officer to be recalled. The charges must recite allegations of "malfeasance", "misfeasance while in office", or violation of the officer's oath. The "act or acts complained of [must be stated] in concise language . . ." RCW 29.82.010. Once the charge has been properly filed, an appropriate official, here the county prosecutor, determines the sufficiency of the allegations. RCW 29.82.020. Thereafter sponsors of the recall may circulate petitions at a time and within a time period specified in RCW 29.82.025. If a sufficient number of authentic signatures of qualified voters is collected, a date is fixed for the recall election. Const. art. 1, §§ 33 and 34; RCW 29.82.090–.100. The date should be 45 to 60 days from certification of the sufficiency of the petitions, though not between the primary and general election in any calendar year. RCW 29.82.100. The results of the election are tallied as would be the results of a regular election for the

office at issue, and if a majority of all votes cast support recall, the officer is thereupon discharged from office. RCW 29.82.140.

Janovich argues that the procedure followed by the respondents violates the constitutional and statutory recall scheme in numerous ways. First he contends that this or any recall campaign which might be undertaken against him at this time must violate the time requirements of RCW 29.82.025. That section, added to the chapter on recall by legislative amendment in 1971, provides, in pertinent part:

> The sponsors of a recall demanded of any public officer may obtain and file supporting signatures after the issuance of the ballot synopsis by the appropriate official. Such signatures shall be obtained and filed within the time periods prescribed as follows:
>
> . . .
>
> (2) In the case of a person elected to a four or six year term of office, all petitions must be filed and circulation stopped within ten months prior to the next general election in which the officer whose recall is demanded is subject to reelection.

Janovich has recently been reelected to a 4–year term of office and will not regularly stand for reelection until November 1982. He contends the statute requires that petitions for his recall be filed within 10 months of his next election, *i.e.*, between January and November of 1982. He then argues that because the recall sponsors have only a limited time period in which they may circulate the petitions, they must wait until 1982 to initiate the recall process. Thus he argues the current recall campaign is void at the outset.

■■ Our primary object in interpreting a statute "is to ascertain and give effect to the intent of the legislature." *Strenge v. Clarke*, 89 Wn.2d 23, 29, 569 P.2d 60 (1977). Here neither the provision itself, the amendatory act of which it was a part, nor the chapter as a whole contains a statement of legislative purpose. However, the manifest purpose of the statutory scheme as a whole is to carry out

the legislature's duty, as mandated in article 1, section 34, to

> pass the necessary laws to carry out the provisions of section thirty-three [declaring the power of recall], and to facilitate its operation and effect without delay: . . .

██ The construction demanded by Janovich would scarcely have the mandated effect. It would suggest that the electors may only recall an offending officeholder in the few months prior to the end of his term of office. It is precisely this period in which the power of recall is least necessary since the electors then have an independent opportunity to remove the official, for cause or no cause, in the forthcoming general election. At the same time, during the period just prior to the official standing for reelection, there is arguable justification for limiting the exercise of the power of recall. We believe the legislature intended the recall process be eliminated from, rather than limited to, the period immediately preceding the end of an officeholder's official term.

Janovich contends, however, that the language of the statute is plain on its face and must be accorded the meaning he proposes, even at the cost of a substantial curtailment of the recall right. This contention is unpersuasive. Admittedly, given the apparent purpose of the statute, the use of the term "within" is inartful. However, a "fundamental guide to statutory construction is that the spirit or intention of the law prevails over the letter of the law." *State v. (1972) Dan J. Evans Campaign Comm.*, 86 Wn.2d 503, 508, 546 P.2d 75 (1976). *See also Department of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973); *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 420–21, 486 P.2d 1080 (1971). *See generally* J. Sutherland, *Statutory Construction* § 6006 (1943). Applying this principle, we hold that the statute requires circulation and filing of petitions not less than 10 months prior to the relevant forthcoming regular election. To hold otherwise would be a disservice to the general legislative scheme for the regula-

tion of recall elections, and would raise constitutional questions regarding the validity of the statute itself.

Janovich next contends that the recitation or allegation of acts of malfeasance or misfeasance, or in breach of the officer's oath, contained in the demand for recall election, is legally insufficient. His claim is that the recitation does not in clear, declarative language charge Janovich with wrongful conduct. The recitation rather indicates that Janovich has been charged by federal criminal complaint with the commission of certain unlawful acts, and reiterates the language of these federal charges, including allegations that Janovich has accepted bribes and joined with others in racketeering activity. Respondent McCord, author of the recall charge, added to his recitation that "[t]hese charges committed by Sheriff George V. Janovich constitute acts of malfeasance and misfeasance and the violation of his oath of office."

■■ Recently, in *McCormick v. Okanogan County,* 90 Wn.2d 71, 75, 578 P.2d 1303 (1978), we observed that

the judiciary must exercise restraint in interfering with the elective process which is reserved to the people in the state constitution.

Applying this principle, the court rejected appellant's claim that technical deficiencies in the submission of recall petitions made the canvassing of the petitions incurably defective and warranted granting of a writ staying the recall election at issue. Such deficiencies, we held, would not be permitted to hinder "the people's right to recall their elective officers." Unless injury directly caused by the deficiency has been shown, "substantial compliance is sufficient." *McCormick,* at 79.

Exercising the same restraint in determining the legal sufficiency of recall charges, the court neither questions the truth of the charges, nor inquires into the motives of those filing the charges. *State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 124, 492 P.2d 536 (1972). *See also State ex rel. LaMon v. Westport,* 73

Wn.2d 255, 438 P.2d 200 (1968); *Skidmore v. Fuller,* 59 Wn.2d 818, 370 P.2d 975 (1962).

Here it is apparent that the author's intent was to adopt the charges alleged in the criminal complaint as his own. If a recall election is eventually held, voters will understand the issue to be whether Janovich has in fact engaged in wrongful conduct, not whether he has been indicted for such conduct. In his synopsis the prosecutor sets out the charges being levied against Janovich in a proper declarative form.[1] The alleged acts of malfeasance are indisputably serious and sufficient to initiate a recall campaign. The charges as stated in the demand for recall election are sufficient to trigger the prosecutor's review and circulation of petitions bearing a concise and proper synopsis.

Next Janovich urges that the demand for recall election is additionally insufficient because McCord failed to include his postal address as called for in RCW 29.82.010. McCord did append his King County business address to the document. In *McCormick v. Okanogan County, supra,* we held another technical requirement of the recall chapter not to be mandatory absent an express legislative declaration that noncompliance would void a subsequent election, and given that the technical deficiency does not by its nature affect the merits of the process. *McCormick,* at 79. Inclusion of a

---

[1] The prosecutor's ballot synopsis provides:

"That while participating in a criminal conspiracy to control or attempt to control the tavern business in Pierce County, to engage in illegal gambling and prostitution, and to frustrate investigations into criminal acts perpetrated by members of the conspiracy, all in return for money and other things of value, the said Sheriff of Pierce County, George V. Janovich

"1. Did, between on or about April 1, 1977 and on or about May 27, 1977, cause the harassment of the "Back Forty" Tavern by having his deputies, in their official capacity, frequently visit the tavern for the purpose of discouraging customers from patronizing the tavern;

"2. Did, on or about October 26, 1978 at Tacoma, give permission to an FBI agent, acting undercover, to engage in illegal gambling and prostitution at "Mr. Lucky's Tavern" and elsewhere in Pierce County;

"3. Did, on or about November 9, 1978 at Tacoma, reiterate his assurances of permission regarding illegal gambling to an FBI special agent, acting undercover, and did accept $1,000.00 from the agent in return for the grant of permission."

home mailing address, under the facts of this case, is not mandatory.

Finally, Janovich argues that assuming the allegations made in the demand for recall election are otherwise sufficient, the charges are still defective in that they pertain to alleged acts committed by him during a prior term of office. The question of whether an official may be recalled for acts committed in a prior term of office has never been addressed by this court.

The constitutional language, providing for recall upon charges of "malfeasance or misfeasance while in office", or violation of the official's "oath of office" offers no clear answer to the question. Courts in other jurisdictions are divided as to whether, based upon such constitutional or statutory language, or provisions of similar import, alleged misconduct in a prior term could serve as grounds for removal. *Compare In re Opinion of the Justices,* 308 Mass. 619, 626–28, 33 N.E.2d 275 (1941) (interpreting misconduct "in" office to refer to an official's entire tenure so as to effect the purpose in the constitutional provision), *with State ex rel. Stokes v. Probate Court,* 22 Ohio St. 2d 120, 124, 258 N.E.2d 594 (1970) (construing analogous language strictly, as removal statutes are "quasi–penal" in character). *See generally* Annot., *Removal of Public Officers for Misconduct During Previous Term,* 42 A.L.R.3d 691 (1972).

█ It is frequently asserted that a reelection acts as a bar to removal for prior acts because the electors by their actions have condoned the official's prior acts. However, this rationale is inapposite where, as here, the electorate is not advised of the official's alleged misconduct until after the reelection has taken place. *See Baker v. Baker,* 87 Misc. 2d 592, 594–95, 386 N.Y.S.2d 313 (1976). Undisclosed misconduct may especially warrant removal after reelection where the misconduct affects "general character and fitness for office." *In re Sarisohn,* 21 N.Y.2d 36, 46, 233 N.E.2d 276, 286 N.Y.S.2d 255 (1967). Moreover, many of the cases adopting a broad interpretation of the cause requirement involve attempts at removal by judicial or administrative

process. Such is the circumstance in *State ex rel. Turner v. Earle,* 295 So. 2d 609 (Fla. 1974), relied upon by Janovich here. It may well be in such cases that courts are hesitant to frustrate the popular will apparently expressed through the election process. This case is fundamentally different. Because the constitutional provisions here at issue declare the authority of the electorate to remove by political process those they have cause to distrust, there need be little concern that removal will contravene the will of the people. In such a case the policy of judicial restraint discussed earlier would indicate an interpretation favoring the right to the recall.

Alternatively, some courts take the view that reelection gives one a claim upon the office, which is unaffected by prior misdeeds. This view may rest on an analogy to penal provisions, as in *State ex rel. Stokes v. Probate Court, supra* at 124, generally construed strictly to benefit the accused. However, this rationale is inapplicable to the political process invoked here. "[A]s against the people, a public officer, their servant, has no rights whatever, so far as his possession of the office is concerned, which may not be ignored by the people speaking in a lawful manner." *Cudihee v. Phelps,* 76 Wash. 314, 330, 136 P. 367 (1913).

We hold that the constitutional and statutory provisions here at issue, recognizing in the people a broad right to recall their elected officials, contemplate that officials may be recalled for misconduct during a prior term of office.

## CONSTITUTIONAL CHALLENGE

Wholly apart from his challenges to procedures followed by the respondents here, Janovich contends that a procedure requiring him to endure a recall election while criminal proceedings are pending against him is a denial of his rights of free speech and candidacy.

His constitutional argument appears not to rest on a claimed incompatibility between a recall election and criminal prosecution, but between the demands of a recall campaign and an alleged "gag" order by Judge Morell Sharp of

the United States District Court for the Western District of Washington. Judge Sharp, it is claimed, has ordered that the parties refrain from making extrajudicial statements regarding the merits of the criminal suit pending in his court. It is not clear whether this order, alleged to have been made on January 3, 1979, might be open to modification upon motion by Janovich, particularly in light of Judge Sharp's subsequent order of a change of venue in the federal criminal action.

In any event, assuming the federal order were to remain in effect, it is not clear how the recall election would itself be a cause restricting Janovich's right to speech or political participation. By his reasoning anytime a recall election (or arguably any election) is to be called, account must be taken of potential disabilities of the officeholder (or candidate) and an effort must be made to accommodate the expected participant's schedule. Such an argument simply has no basis in law or logic, and Janovich cites no authority to support it.

The fact that a federal court order is the disabling factor does not appear pertinent. If Janovich wishes to contend that the federal court's order itself unconstitutionally restricts his freedom of expression, he must address his argument to the federal judiciary.[2]

Assuming alternatively that Janovich would rest his claim on the inherent difficulty in properly defending himself in both a recall campaign and criminal prosecution, the problem becomes somewhat more complex. Though doubtless he would plead his innocence to both the electors and the federal jury, in the political campaign he may face a "cross–examination" by the press to which he may not effectively assert his Fifth Amendment rights.

The role of this court in relieving Janovich of this burden is a limited one. The interest of the people in an expeditious recall procedure is fundamental. In *Wesberry v.*

---

[2]We do not suggest there is merit to such a claim by Janovich, only that it is a matter best addressed to the court concerned.

*Sanders,* 376 U.S. 1, 17, 11 L. Ed. 2d 481, 84 S. Ct. 526 (1964), the court reaffirmed the importance of the right to vote: "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." The right is of no less moment where the office at issue is that of a local government's chief law enforcement official, and where the people have determined the recall is a means by which they must ensure honest, representative government.

The collision between a defendant's alleged prejudice and the political rights of the public requires a balancing of interests. In *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976), the court held that while no clear priority exists between the rights of free press and fair trial, publication of information regarding a pending criminal proceeding could not be enjoined while less restrictive alternatives existed to assure protection to the criminal defendant. Here Janovich has already been granted a change of venue and may be able to obtain a continuance of his trial. The people, on the other hand, rely upon the recall as their only direct means of ensuring propriety in their elected officials.

In balancing the risks inherent in the recall against those flowing from its injunction, we find the latter fraught with greater hazard. The political process will be permitted to continue, unchecked by judicial intervention.

The trial court's dismissal of the appellant's action is affirmed.[3]

STAFFORD, HOROWITZ, and WILLIAMS, JJ., concur.

DOLLIVER, J. (concurring in part; dissenting in part)—I have no quarrel with the substance of the majority opinion.

---

[3]Because we affirm dismissal of the action for reasons indicated above, we need not consider the respondent's assertion that the suit was not initiated in a timely manner.

Plaintiff Sheriff Janovich is properly subject to a vote on his recall from office. Where I do differ from the majority is in my belief that, unless the time of the recall is delayed, the constitutional rights of Sheriff Janovich will be irreparably harmed.

At the present time, Sheriff Janovich has been removed from the conduct of the affairs of his office, and the coroner of Pierce County is performing the actual duties of the sheriff. RCW 36.24.010; 36.28.090. Plaintiff is in San Francisco being tried on federal racketeering charges. The trial, beginning the latter part of March, may continue as long as several months. San Francisco is approximately 800 miles from Tacoma and Pierce County, and it is hardly reasonable to expect Sheriff Janovich will be able to spend much time in his home county campaigning against his recall.

If the federal trial results in the conviction of Sheriff Janovich, the office of sheriff of Pierce County immediately becomes vacant by statute. RCW 42.12.010. The recall issue then becomes moot. In the meantime, since the coroner is conducting the actual affairs of the office of sheriff of Pierce County, any dangers—real or presumed—in having plaintiff continue in office are illusory. He has the husk of the office, but the power is gone.

What are the interests of the citizens of Pierce County? As the majority states, there is an interest in "an expeditious recall procedure." But there are other interests which I would hope are of concern to the citizens of Pierce County and all citizens of the state: that a person is presumed innocent until proven guilty by a court of law; that in the continuing political debate among officeholders, office seekers and citizens generally, those running for public office have a fair and equal opportunity to present their case; and that courts protect individual rights no matter how loud the public outcry or how unpopular the individual may be.

Under the statute, RCW 29.82.100, the recall election must be scheduled within 45 to 60 days from the date this

opinion is issued. Those connected with the San Francisco trial predict it may take as long as 3 months. If Sheriff Janovich is not convicted after this trial, he will have no time in which to present his case to the voters of Pierce County. Surely the avidity of those who signed the recall petitions against plaintiff is not so overpowering as to wish to deny him the rights of every other citizen.

What are these rights? They are freedom of speech (U.S. Const. amend. 1; Const. art. 1, § 5); due process (U.S. Const. amend. 14; Const. art. 1, § 3); equal protection under the law (U.S. Const. amend. 14; Const. art. 1, § 12) and free and equal elections (Const. art. 1, § 19). To call for "honest, representative government" as does the majority and then to deny fundamental rights to a citizen in order to reach that goal seems to me wholly inconsistent. The majority says, "The political process will be permitted to continue, unchecked by judicial intervention."—a hollow statement when a key participant is unable to be part of the process.

I believe this court has the power to enforce the constitution and to protect the constitutional rights of those who appear before it. I would delay the recall election until 45 days from the date of the conclusion of the federal trial involving Sheriff Janovich. If he is convicted, the issue is moot and the citizens of Pierce County will be saved the cost of a meaningless election. If he is not convicted, the recall may proceed, and however they vote and whatever the outcome, the citizens of Pierce County can take pride that they will have abided by the dictates of the federal and state constitutions.

ROSELLINI, WRIGHT, BRACHTENBACH, and HICKS, JJ., concur with DOLLIVER, J.

### ORDER STAYING RECALL ELECTION

In opinions filed today in this matter the court unanimously upholds the validity of the procedures followed in proposing an election to recall appellant from his position as sheriff of Pierce County. A majority of the court, however (Rosellini, Wright, Brachtenbach, Dolliver, and Hicks,

JJ.), found the constitutional rights of appellant would be irreparably harmed unless the date of the recall election is set after the conclusion of the trial presently under way in United States District Court in San Francisco, California, in which appellant here is a defendant.

Therefore, it is ordered that the recall election may proceed but that the date set for the election, if it is necessary to hold it, shall be no earlier than 45 days from the conclusion of the trial in San Francisco. It is further directed that this order shall be appended to the report of this case in the Washington Reports.

Dated this 30th day of March, 1979.

ROBERT F. UTTER
CHIEF JUSTICE