In the Matter of the Application for the Removal from Office of OTTO H. DROEGE, a City Magistrate, Appellant.

THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Respondent.

Appeal — proceeding to remove a city magistrate not a special proceeding appealable to Court of Appeals — when Court of Appeals has no jurisdiction to review proceeding to remove an officer.

A proceeding in the Appellate Division for the removal of a city magistrate of the city of New York is not a special proceeding, and an appeal therein does not lie to this court as matter of right under the provisions of section 190 of the Code of Civil Procedure.

Since the Appellate Division is vested with the power of removal "for cause," the Court of Appeals cannot assume jurisdiction of such a pro-ceeding without substituting its judgment and discretion for that which the Constitution and the statutes have granted exclusively to the former court.

When, by the Constitution or by valid statutes, inferior tribunals or offi-cers are vested with discretionary or judicial power, this court has neither jurisdiction nor control over the exercise of such power except to see that the inferior tribunal or officer, on the occasion of its exercise, had jurisdiction over the subject-matter thereof, and that the power has been exercised in the form prescribed by the Constitution or the statute. In this proceeding the exercise of jurisdiction was clearly justified, and, as it was exercised in compliance with the constitutional and statutory provisions, there is nothing for this court to consider.

*Matter of Droege*, 129 App. Div. 866, appeal dismissed.

(Argued November 11, 1909; decided December 14, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 26, 1909, which removed the appellant herein from the office of city magistrate in the city of New York.

The facts, so far as material, are stated in the opinion.

*Louis Marshall, John B. Stanchfield* and *Howard S. Gans* for appellant. The determination of the Appellate Division being a final order in a special proceeding an appeal therefrom lies to this court. (*Matter of King*, 130 N. Y. 602; *Matter of Percy*, 36 N. Y. 651; *Matter of Kelly*, 59 N. Y. 595; *Matter of Gale*, 75 N. Y. 526; *Matter of Eldridge*, 82 N. Y. 161; *Matter of an Attorney*, 83 N. Y. 166; *Matter of Clark*, 184 N. Y. 222; *Matter of Kaffen-berg*, 188 N. Y. 49; *Matter of Thirty-fourth Street*, 102 N. Y. 343; *Matter of People's R. R. Co.*, 112 N. Y. 578; *Matter of N. E. Ry. Co.*, 167 N. Y. 37.)

*Wallace Macfarlane, Howard Townsend* and *Einar Chrystie* for respondent. If the Court of Appeals has juris-diction to review in any respect the order of the Appellate Division removing the appellant, it will go no further than to

inquire whether the Appellate Division has proceeded in accordance with law. (*Ex parte Johnson*, 3 Cow. 371; *People ex rel. Platt* v. *Stout*, 11 Abb. Pr. 17; *Matter of Guden*, 171 N. Y. 529; *Matter of Curtis*, 108 Cal. 661; *Osgood* v. *Nelson*, L. R. [5 H. L.] 636; *Ex parte Rameshay*, L. R. [18 Q. B.] 173.)

Werner, J.    In April, 1908, the Association of the Bar of the City of New York presented to the Appellate Division in the first department a petition praying for the removal of Otto H. Droege from the office of city magistrate of the city of New York, which office he was then holding under an appointment by the mayor of the city made pursuant to the provisions of the charter. This petition was supplemented by a copy of the testimony which had been given before the grievance committee of the Association of the Bar, at the instance of the mayor, through whose instrumentality the investigation had been instituted. The substance of the charge set forth in the original petition was that Droege had been guilty of misconduct as magistrate in illegally making an order for the discharge from imprisonment of one Louise Durand, whom he had lawfully convicted of the crime of disorderly conduct; that said order was made without authority or jurisdiction, after said Durand had been thus convicted; that after said order had been made Droege acquired information that an examination was being made of the records of his court, presumably for the purpose of newspaper publication, and that he thereupon entered into negotiations with a lawyer of his acquaintance to whom he gave the sum of $250 to procure the suppression of the threatened publication. A copy of the petition was served upon Droege who filed an answer thereto, admitting the transaction set forth in the petition, but denying the alleged illegality of his acts and the imputed wrongfulness of his motives.

Notwithstanding the admissions in Droege's answer, the Appellate Division made an order giving Droege the opportunity to present such oral testimony as he might be able to

produce, and for that purpose a hearing was fixed for June 23d, 1908, at which time the court heard the testimony which appears in the record relating to the charges set forth in the original petition.    Meanwhile it transpired that the commissioners of accounts of the city of New York, at the instance of the mayor, had been making an independent investigation of Droege's methods and practices as magistrate in his conduct of the night court, in the course of which investigation it developed that between September, 1907, and February, 1908, Droege had made orders for the discharge of sixteen different convicted persons, and that every one of such orders was claimed to be illegal.    Thereupon the Association of the Bar presented to the Appellate Division a supplemental petition setting forth the additional information thus acquired from the commissioners of accounts.    This supplemental petition and a notice of hearing were served upon Droege.    On the day fixed by the notice, Droege appeared in court and asked for an adjournment, and his request was granted.    He was directed to file his answer not later than August 8, 1908, and then an order was made referring it to William H. Willis to take proofs and report upon the matters specified in the supplemental petition.    Droege filed his answer to the supplemental petition, in which he admitted the substance of the transactions, but denied their impropriety or illegality.    The hearing proceeded before the referee, extending over many days, in the course of which Droege and a number of witnesses gave their testimony.    At every stage of the proceedings Droege was represented by counsel, and was given the fullest opportunity to examine and cross-examine the various witnesses who testified for and against him.

At the conclusion of the several hearings upon the matters set forth in said supplemental petition and the answer thereto, the learned referee made his report to the effect that the several charges set forth in the supplemental petition had been fully sustained by the evidence; but this report was qualified by the referee's opinion that the practice of making such orders as were charged against Droege had been quite

generally followed by other city magistrates, under a construction of certain provisions of the city charter which, in the judgment of the referee, led Droege to believe that he had the right to make such discharges, and that in making the orders therefor he was not actuated by undue influence, but by a mistaken estimate of his powers and duties as a magistrate.

After considering all the evidence and the referee's report as to the supplemental charges, the learned Appellate Division made an order removing Droege from the office of city magistrate, setting forth the reasons for this decision in an opinion in which the whole matter was carefully reviewed, and which was concurred in by all the members of the court. From the order thus made Droege has appealed to this court.

The first question we have to consider is whether an appeal lies to this court from the order of an Appellate Division in such a case as this. That depends primarily upon the further question whether this is a special proceeding as defined by the Code of Civil Procedure. If it is such a proceeding, there can be no doubt that the order of the Appellate Division is one which finally determines the proceeding and, under the provisions of section 190 of that Code, an appeal would seem to lie to this court as matter of right. Is this a special proceeding? The legislature has defined an action to be "an ordinary prosecution, in a court of justice, *by a party against another party*, for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Pro. § 3333.) By the same authority it is declared that "every other prosecution *by a party*, for either of the purposes specified in the last section, is a special proceeding." (§ 3334.) In determining the character of the proceeding at bar, these definitions are to be read in connection with the constitutional and statutory provisions by virtue of which various elective and appointive officials may be removed from office. The Constitution prescribes that "Justices of the peace and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after

due notice and an opportunity of being heard by such courts
as are or may be prescribed by law." (Const. art. 6, § 17.)
For the purpose of making this constitutional provision
effective the legislature enacted a general statute declaring
that "Justices of the peace, police justices, justices of jus-
tices' courts, and their clerks, are removable by the Appellate
Divisions of the Supreme Court." (Code Crim. Pro. § 132.)
As to the city of New York a special statute was enacted
and incorporated in its charter under which "A city magis-
trate or police clerk may be removed for cause, after due
notice and an opportunity of being heard, by the Appellate
Division of the Supreme Court within the division for which
such city magistrate or police clerk was appointed." (Greater
N. Y. Charter, § 1401a.)

The more carefully these constitutional and statutory pro-
visions are studied, the more apparent it becomes that the
proceedings therein provided for are not special proceedings
within the Code definitions referred to. Such a proceeding
as the one at bar is not "in a court of justice, by a party
against another party," for it could be carried from beginning
to end without the presence of any party save the officer
against whom charges are made. The Constitution provides
that "Judges or justices of inferior courts  *  *  .*  may
be removed for cause, after due notice and an opportunity of
being heard." If there had been added to the words of the
Constitution just quoted a provision that such removals should
be made "by such state officers as are or may be prescribed
by law," the legislature could have enacted a statute clothing
the governor, lieutenant-governor or any one of the other
state officers with the power to effectuate the command of the
Constitution. If such a statute designating such a state officer
should simply follow the language of the Constitution and
provide that such removal may be made "for cause, after
due notice and an opportunity of being heard," it could
hardly be doubted that such a proceeding could be set in
motion solely upon the initiative of the official vested with
the power and few lawyers would venture to claim for it the

4

characteristics of a special proceeding originating in a court of justice. How is this case any different because the governmental agency through which certain removals from office may be effected, happens to be the Appellate Division of the Supreme Court instead of the governor or lieutenant-governor?

Counsel for appellant cites numerous cases to support his contention that this is a special proceeding reviewable by this court. Among them are *Matter of King* (130 N. Y. 602); a number of proceedings for the suspension or removal of attorneys; others relating to the statutory powers of the Appellate Division to appoint commissioners to determine whether street railroads shall be built where the adjoining owners have not consented; cases in which we have entertained jurisdiction to review the action of the state board of railroad commissioners in granting or refusing applications for certificates of public convenience and necessity, and finally, cases involving the constitutionality of legislative apportionments. In all these cases, except the so-called attorneys' cases, our jurisdiction has depended upon constitutional provisions or statutes which either conferred it directly or by necessary implication, and then only for certain limited purposes. In *Matter of King* (*supra*) the main proceeding, which was for the removal of a police justice upon charges of misconduct, was not considered on appeal to this court, the review being confined to the order of the General Term of the Supreme Court allowing certain costs and disbursements. The question whether the General Term had the power to make these allowances depended wholly upon the construction of the statute and that is all that was before this court on appeal. In the matter of admissions to the bar and removals or suspensions from practice we have conditions that are unique. The legislature has vested the Appellate Division of the Supreme Court with the power to admit applicants to practice, and to suspend or remove practitioners for cause. But this court is charged with the duty of making and enforcing the rules prescribing the qualifications for admission to the practice of the law.

Applications for admission to practice as well as suspensions and removals of attorneys are legal proceedings in the sense that they are referred to the courts as courts for action that is judicial. Appeals to this court from decisions of the former General Term and Appellate Division in such cases have always been entertained, at least since the decision in *Matter of Cooper* (22 N. Y. 67, 86), although it is by no means clear that such applications are special proceedings as that term is defined in the Code and in the profession. However that may be, the practice as to them is now too well settled to be disturbed, and we do not see how, in any event, they can be regarded as precedents for the proceeding at bar. There is a very obvious distinction between cases arising out of the relations between our courts of record and their officers, and the cases in which a particular court is singled out by the legislature and vested with the power of removal.

Quite apart from definitions and legal nomenclature, we regard this as a proceeding in which we cannot assume jurisdiction without substituting our judgment and discretion for that of the Appellate Division. That court is vested with the power of removal " for cause." Neither the Constitution nor the statutes have attempted to define what that " cause " shall be. If this court should undertake to decide upon the sufficiency or insufficiency of a " cause " passed upon by the Appellate Division in such a case it would be an assumption of power by this court, which the Constitution and the statutes have granted exclusively to the Appellate Divisions. The case at bar is not to be distinguished from *Ex parte Johnson* (3 Cow. 371). The Constitution of 1821 provided that justices of the peace might be removed by the County Court for causes particularly assigned by the judges of that court. In *Johnson's* case an application was made to have him removed from the office of justice of the peace for making a false return to a certiorari, and for keeping his office in a grog shop. The County Court denied the application by simply refusing to consider the matter. Upon application to the Supreme Court for a writ of mandamus to com-

pel the County Court to take cognizance of the matter, the Supreme Court said, *per curiam:* "The whole was a mere matter of discretion with the Common Pleas. Under the Constitution, (art. 4, § 7) they are the sole judges whether they will notice the charges preferred or not. They hold a constitutional power, with which we will not interfere." For these reasons the appeal should be dismissed.

If we should admit, however, that the case is one which can be considered by this court, our investigation would necessarily come to a very abrupt termination, for there is here no question that the Appellate Division had jurisdiction of the matter, and there is no criticism on its practice or procedure. This appeal, therefore, resolves itself into an attempt to review the merits of the charges against the appellant, and that we have no right to do, even under the most liberal interpretation of our powers. Even in England, where the courts and judges are free from many of the restraints which our written Constitutions have thrown around our judicial system, it has been held that in such cases the courts on appeal will look only far enough to see if there was a real and substantial cause as distinguished from a futile or frivolous prosecution, and when once that question is decided in the affirmative it is the end of the appeal. Substantially the same rule was followed in *People ex rel. Platt* v. *Stout* (11 Abb. Pr. 17), where the relator had been removed from the office of chamberlain by the mayor and common council of the city of New York under a section of the charter conferring that power. In that case the Supreme Court considered the power of removal of certain public officers provided for in the Constitutions of 1821 and 1846, and said: "It appears not to have been contemplated that any review should be had of its exercise." (p. 20.) But passing on to the consideration of what the court could review if it assumed jurisdiction, it further said: "It may be laid down as a general proposition,— abundantly supported by authority, and as the result of our political or governmental institutions, which operate by a delegation of political or governmental powers to various tribunals, officers, and agents,—

that when the Constitution, or the legislature by law authorized by the Constitution, vests a discretionary or judicial power in any particular inferior tribunal or officer, that this court has no other or further jurisdiction or control over the exercise of such power by such inferior tribunal or officer, than to see that such inferior tribunal or officer, on the occasion of its exercise, had jurisdiction over the subject-matter of its exercise,— that is, that the occasion or circumstances, contemplated by the Constitution or the act, for its exercise had occurred,— and that the power has been exercised in the form prescribed by the Constitution or the Act." (p. 24.)

Since it is practically conceded in the case at bar that there did arise a situation which justified the exercise of jurisdiction by the Appellate Division, and that it was exercised in such form as was fully in compliance with the constitutional and statutory provisions, it again follows that there is nothing for this court to consider, and for that reason the appeal should be dismissed.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT and HISCOCK, JJ., concur; VANN and CHASE, JJ., concur in result on last ground stated in opinion.

Appeal dismissed.