PEOPLE ex rel. WATT et al. v. ZUCCA et al.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

1. LIMITATION OF ACTIONS (§ 34\*)—"SPECIAL PROCEEDING"—"ACTION."

Code Civ. Proc. § 382, subd. 2, requires an action on a liability created by statute to be brought within six years, and section 414 provides that the provisions of chapter 4 shall apply to a civil action or special proceeding. Section 3333 provides that the word "action" as used signifies an ordinary prosecution "in a court of justice" by a party against another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense, and section 3334 provides that every other prosecution by a party is a special proceeding. *Held*, that a property owner's claim for damages from the construction of a bridge over Harlem river in New York City pursuant to Laws 1890, c. 207, requiring the board of assessors to estimate the damages sustained by each landowner therefrom and make an equitable award, was not a "special proceeding" within sections 3333 and 3334, so as to make the six-year limitation prescribed by section 382 applicable, but was a proceeding before an executive board under a statute, so that none of the limitations prescribed by the Code were applicable.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 151–157; Dec. Dig. § 34.\*

For other definitions, see Words and Phrases, vol. 7, pp. 6586–6590; vol. 8, pp. 7802, 7803; vol. 1, pp. 128–140; vol. 8, p. 7563.]

2. MUNICIPAL CORPORATIONS (§ 385\*)—CHANGE OF GRADE—RIGHT TO DAMAGES.

Pursuant to Laws 1890, c. 207, providing for the construction of a bridge over Harlem River in the city of New York to replace the then existing Macombs Dam Bridge, and authorizing the award of damages to property owners caused thereby, the grade of the Macombs Dam Road, adjacent to relator's premises, was raised so that at the corner of 154th street the increased height of the road is 18 feet 9 inches, and relator's property, which is in the upper half of the block between 154th and 155th streets, is shut off by a wall forming the north end of the abutment, 61 feet long and 28 feet high, and the increase in grade directly in front of relator's property is approximately 27 feet, leaving relator's land sunken from 20 to 27 feet below the present grade with more than 90 feet of the frontage on Macombs Dam Road totally destroyed. *Held*, that the fact that the grade of part of the original road about 5 feet in width in front of relator's property remained unchanged would not prevent relator from recovering damages for the change of grade in front of his property by the construction of the bridge.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 925–928; Dec. Dig. § 385.\*]

Certiorari by the People, on the relation of Thomas L. Watt and another, as executors, etc., of Mary G. Pinkney, deceased, and others, against Antonio Zucca and others, composing the Board of Assessors of the City of New York, to review proceedings of such Board. Writ sustained, determination of the Board of Assessors annulled, and matter remitted with directions.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

Abram I. Elkus, of New York City, for relators.

Charles J. Nehrbas, of New York City, for defendants.

DOWLING, J. The relators have obtained this writ of certiorari to review the proceedings of the board of assessors of the city of New York, resulting in the dismissal and disallowance of the relators' claim for damages presented pursuant to chapter 207, Laws of 1890, which provided for the construction of a bridge over the Harlem River, in the city of New York, to replace the then existing Central or Macombs Dam Bridge. This act became a law April 28, 1890. The section applicable to the awards for damages caused by change of grade is as follows:

"The expense of constructing the said bridge and approaches thereto with the necessary abutments and arches as aforesaid shall not exceed one million, two hundred and fifty thousand dollars, and such further sum for paying awards for damages caused by reason of the change of grade of streets or avenues approaching the same, authorized by this act, as may be awarded by the board of assessors of the said city, whose duty it shall be to estimate the damage which each owner of land fronting on such street or avenue will sustain by reason of such change, to such land, or to any improvements thereon, and make a just and equitable award to the amount of such damage to the owner or owners of such land or tenements fronting on such street or avenue, and opposite streets and affected by such change of grade."

The exact time when the work upon this bridge was completed does not affirmatively appear, but it was somewhere between the years 1894 and 1897. The first hearing at which the claim of the relators was urged was held by the board on August 25, 1908, and proof was taken of the damage caused to relators by the change of grade caused by the construction of the new bridge and approaches, the witnesses upon that point giving the following valuation of the damages:

| For the relators: | William R. Low, | 20,310 |
| | Jacob D. Butler, | 23,130 |
| For the city: | Charles A. Berrian, | 7,293 |

On November 4, 1909, the relators obtained from the Supreme Court a peremptory writ of mandamus directing the board of assessors, within 20 days after service of the writ, to pass upon the relators' claim as required by statute, and to make a return thereof pursuant to law. Thereafter, on November 23, 1909, the board of assessors, without giving any reason therefor, dismissed and disallowed the relators' claim. The defendants now seek to sustain this action of the board upon the ground that the claim of the relators is barred by the statute of limitations. The city's contention is that the provisions of section 382, subd. 2, Code Civil Procedure, applied, providing a limitation of six years within which an action must be brought to recover upon a liability created by statute.

[1] Section 414, Code Civil Procedure, provides that the provisions of chapter 4 (within which is embraced the section heretofore quoted) apply to a civil action or special proceeding. The defendants claim that this is a "special proceeding" within the meaning of the Code. Sec-

tions 3333 and 3334, Code Civ. Proc. define "actions" and "special proceedings" as follows:

"Sec. 3333. The word 'action,' as used in the new revision of the statutes, when applied. to judicial proceedings, signifies an ordinary prosecution, in a court of justice, by a party against another party, for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

"Sec. 3334. Every other prosecution by a party, for either of the purposes specified in the last section, is a special proceeding."

It seems clear that ·the actions and special proceedings referred to in the Code do not embrace the relators' application for relief herein. The test of whether or not an application for relief comes within the definition of the Code must be found in the language of the Code itself, which limits its scope to actions or special proceedings in a court of justice. Thus in McLean v. Jephson (Sup.) 13 N. Y. Supp. 834, Ingraham, J., said:

"This proceeding, not having been commenced by the service of a summons, is not an action. It is, however, a prosecution in a court of justice by a party against another party for the enforcement of a right, and is a special proceeding within section 3334 of the Code above cited."

In People ex rel. Harvey v. Heath, 20 How. Prac. 304, where the action sought to be reviewed was that of the commissioner of highways, and it was contended that the proceedings before them constituted a special proceeding, Marvin, J., said:

"Again, the proceeding in question was not a special proceeding in the sense used in the Code and statute. The Code professes to be an act 'to simplify and abridge the practice, pleadings and proceedings of the courts of this state,' and the remedies in the courts of justice are divided into: First, actions; second, special proceedings. The second section gives us the definition of an action, and by the third section 'every other remedy is a special proceeding.' Remedies where? The answer is, 'In courts of justice.'"

In Matter of Droege, 197 N. Y. 44, 90 N. E. 340, Werner, J., said:

"Such a proceeding as the one at bar is not 'in a court of justice, by a party against another party,' for it could be carried from beginning to end without the presence of any party save the officer against whom charges are made."

We think it clear that the determination of the claim of the relators before the board of assessors was not a special proceeding within the meaning of the Code of Civil Procedure, but was a proceeding before an executive board authorized under legislative act, and therefore not subject to the Code provisions. If the result of this situation of the law is to leave .such claims created by statute without a definite period of limitations, that is a matter for legislative action, but which could not be cured by judicial interpretation. Moreover, the existence of such limitation was not urged by the city when the application was made for the writ of peremptory mandamus, nor was the action of the board of assessors based upon that ground.

[2] It is further contended by the defendants that, because a portion of Macombs Dam Road still remains at the original grade, the relators are without relief. In view of the fact that the portion of the road which still remains in front of the relators' premises is only about five feet in width, and is absolutely useless and valueless for any pur-

pose whatever, this contention does not deserve much consideration. The fact is that the grade of Macombs Dam Road adjacent to the premises in question has been raised so that at the corner of 154th street the increased height of the roadway is 18 feet 9 inches, and the property of the relators, which is in the upper half of the block between 154th and 155th streets, is shut off by a wall forming the northern end of the abutment 61 feet 6 inches long and 28 feet high. The increase in grade directly in front of the relators' property amounted to approximately 27 feet, the wall and stairway descending from the abutment now occupying the remainder of the highway, with the exception of the 5 feet of the original roadway still in front of the relators' land, which was rendered absolutely useless for any purpose of traffic or transportation. The net result of the changes of grade has been to leave the relators' land sunken from 20 to 27 feet below the present grade, with more than 90 feet of the frontage on Macombs Dam Road totally destroyed.

Under these conditions, it becomes apparent, not only that the relators are entitled to be compensated for the damage done their property by the change of grade, but as well that the decision in People ex rel. City of New York v. Sandrock Realty Co., 149 App. Div. 651, 134 N. Y. Supp. 427, has no application whatever to the case at bar. In that case, Willis avenue, upon which a bridge had been erected, was originally 100 feet wide. The Sandrock Realty Company owned property with a frontage of 50 feet on Willis avenue as widened. The bridge as finally completed occupied 70 feet of the center of Willis avenue, and to restore the avenue to its original width of 100 feet the city took title to a strip 35 feet wide on each side, thus making each side of the bridge approach 50 feet in width, and making the aggregate width of the new avenue on both sides of the bridge structure 100 feet. The city took the 35-foot strip from the property owners whose land fronted on Willis avenue in condemnation proceedings, and awards were made to the owners of the land at the time of taking for the land taken. The commissioners made awards to the owners upon the theory that the land was taken to widen Willis avenue, and was not to be used for the construction of the bridge approach. This court held that as the street in front of the claimant's premises in that case remained at the old grade, and the damage done it was by the erection of a structure interfering with his easements of light, air, and access, for which the Legislature had made no provision, the court could not supply the omission and make any award for damages. Furthermore, the city strenuously urged in that case that, inasmuch as a portion of the lands fronting on Willis avenue had been taken in condemnation proceedings, it was the duty of the commissioners of estimate in awarding damages for the portion so taken to include the diminished value of the remainder caused by losing its old frontage, and the damage caused to the new frontage by the construction of the bridge.

It is thus clear that in the case at bar none of the elements in the Willis avenue case are present. No portion of the relators' premises was taken in condemnation proceedings by the city, and they have been compensated in no way as yet for the damage done to their property. There has been no substituted highway constructed in front of their

premises to replace the destruction of the former roadway by its elevation far above the normal grade. Macombs Dam Road as a highway is abolished so far as the relators' property is concerned, for the small portion of it which is left in front of their property, and adjoining the abutment and stairway, is valueless so far as its utility to their property is concerned. They have established damages due to the construction of the approach to the bridge in question, bringing them within the scope of the statute, and the only question for the board of assessors to determine upon the evidence was what amount the relators should receive for the damages sustained.

The writ of certiorari is therefore sustained, with costs, the determination of the board of assessors annulled, and the matter remitted to them, with instructions to determine the relators' damages in accordance with the evidence. All concur.

---

### BORNSTEIN v. FADEN et al.

(Supreme Court, Special Term, New York County. January, 1914.)

1. APPEAL AND ERROR (§ 1203*)—EFFECT OF DETERMINATION—PROCEEDINGS FOR ASCERTAINING DAMAGES—WRIT OF INQUIRY.

The effect of a decision by the Court of Appeals affirming an order granting a new trial in a negligence action, and directing judgment absolute in the Supreme Court for plaintiff, is the same as if a default had occurred, and proceedings for assessing damages may be had at the Trial Term, similar to the taking of an ordinary inquest, but need not be, and, if the assessment is by a jury at a Trial Term, the rules for reviewing the trial of an action are not applicable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4666, 4684–4691, 4693; Dec. Dig. § 1203.*]

2. DAMAGES (§ 197*)—WRIT OF INQUIRY.

A writ of inquiry for the assessment of damages in a personal injury action may be issued before a judge, where some difficult point of law is likely to arise in the course of the inquiry or the facts are important.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 518, 519; Dec. Dig. § 197.*]

Action by Pauline Bornstein, as administratrix, against Beni Faden and others. On motion for a writ of inquiry. Motion granted.

See, also, 149 App. Div. 37, 133 N. Y. Supp. 608.

Boudin & Liebman, of New York City, for the motion.
Walter G. Evans, of Rome, opposed.

GIEGERICH, J. The action is to recover $20,000 damages for the death of the plaintiff's intestate, claimed to have been caused through the defendants' negligence. Upon the trial of the action the complaint was dismissed. The Appellate Division reversed the judgment and ordered a new trial. The defendants gave a stipulation for judgment absolute and appealed to the Court of Appeals, where the order and judgment of the Appellate Division was affirmed and judgment was directed to be entered in favor of the plaintiff on said stipulation. The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes