Burke, J. (dissenting).
I concur completely in answering the first two certified questions in the affirmative. I must dissent, however, from the conclusion that the third certified question should be answered in the negative.
It is far too late to assert that the “ traditional ” nature of removal proceedings can insulate them from the. mandates of the Constitution (see, e.g., Matter of Buffalo, 390 U. S. 544; Spevack v. Klein, 385 U. S. 511). One of these constitutional mandates is that no man, not even a Judge, can be deprived of his liberty or property without due process of law. And due process requires, in turn, that ‘ ‘ penal ’ ’ provisions, in the broad *545 est sense (Matter of Ruff alo, supra; Peters v. Hobby, 349 TJ. S. 331; Powell v. Zuckert, 366 F. 2d 634, 640), be so drawn as to give fair warning as to the conduct sought to be proscribed and as to which a penalty may be imposed. It is clear that “Vague laws in any area suffer a constitutional infirmity” (Ashton v. Kentucky, 384 U. S. 195, 200) and that “ a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it * * * leaves judges and juries free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.” (Giaccio v. Pennsylvania, 382 U. S. 399, 402—403.) It is also abundantly clear that a particular provision, when challenged for vagueness, is to be tested .on its own terms and that it cannot be cured of its fatal vagueness by means of clear and detailed specification of the charges sought to be prosecuted under it since the vice of a vague provision lies precisely in its failure to give fair warning before it is sought to be invoked. “ If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it # * * It is the statute, not the accusation under it, that prescribes the ride to govern conduct and warns against transgression ”. (Lanzetta v. New Jersey, 306 IT. S. 451, 453; emphasis added.) Thus, to rely, as the majority does, on the opinion in Sarisohn v. Appellate Div., Second Dept., S. Gt. of St. of N. Y. (265 F. Supp. 455, 458) which states that “ for cause ” means for cause to be specified in each particular instance, is to ignore the very nature and purpose of the vagueness principle. Such a position essentially confuses the requirement of notice sufficient to enable the party charged to prepare his defense (see Matter of Ruff alo, 390 U. S. 544, supra) with the separate and distinct requirement that the provision under which the charges are sought to be brought be sufficiently clear and precise as to give fair warning that particular conduct may result in the bringing of charges. (See People v. Firth, 3 N T 2d 472.) Were the position relied upon by the majority to be adopted there would be no need to formulate a concept of vagueness since, in any case, the prosecuting authority could avoid any such challenge by minutely drawn and carefully precise charges. Suffice it to say that that proposition is not the law.
*546 The majority’s reliance on Lehmann v. Board of Accountancy (263 U. S. 394) is similarly misplaced since it takes no account of the later case of Barshy v. Board of Regents (347 IT. S. 442) in which the United States Supreme Court dealt with a vagueness challenge to section 6514 (subd. 2) of the Education Law under which the license of a physician can be revoked, suspended or annulled on the ground that the physician has been convicted of a crime in a court of competent jurisdiction. In upholding that provision, the court specifically stated the applicable criteria for resolution of the vagueness challenge: “As interpreted by the New York courts, the provision is extremely broad in that it includes convictions for any crime in any court of competent jurisdiction within or without New York State. This may be stringent and harsh but it is not vague. The professional standard is clear. The discretion left to enforcing officers is not one of defining the offense. It is merely that of matching the measure of discipline to the specific case.” (347 U. S., at p. 448; emphasis added.) By its clear implication, the opinion in Barshy indicates that, where the discretion of the enforcing officers is that of defining the offense, then the provision is unconstitutionally vague. The professional standard for an elected Justice of the Supreme Court is anything but clear and the discretion left to the Court on the Judiciary by the removal provision is precisely that of defining “ for cause ” on an ad hoc basis and after the fact of the conduct sought to be penalized; its discretion is indisputably not that of merely “ matching the measure of discipline to the specific case.” The Court on the Judiciary has itself recognized that this is the case:
11 Removal of any public officer, especially one elected by the voters, is an extreme penalty. Under all the circumstances, we have decided that the charges, grave as they are, do not call for removal. In so deciding, we are not holding that improper or injudicious statements by a Judge in or out of court cannot justify removal from office. Each case must he decided on its own merits and this court will exercise its careful discretion in each instance.” (Matter of Sohel and Liehowitz, 8 N Y 2d [a], [j] ; emphasis added.)
* ‘ ‘ Cause ’ is an inclusive, not a narrowly limited term. Such 1 cause ’ may be directly associated with a Judge’s work as a Judge but is not limited to such matters * * * ‘ Cause ’ for *547 removal of a Judge may be found not only in official misconduct but in Ms taking attitudes and positions which show unfitness for the office and unworthiness of the trust. ’ ’ (Matter of Osterman, 13 NY 2d [a], [p]-[q].)
Moreover, it is undisputed that “ ‘ [n] either the Constitution nor the statutes have attempted to define what that1 ‘ cause ’ ’ shall be.’ ” (Matter of Sarisohn, 21 N Y 2d 36, 41, citing Matter of Droege, 197 N. Y. 44, 51.) Reliance is placed, however, on a number of cases (opn., pp. 539-540) wMch have, in fact, merely compounded the vagueness of the term “ cause ” by attempting to describe it in terms of equally, if not even more, vague language. The result is, nevertheless, the same: the 1 ‘ standard ’ ’ is unconstitutionally vague in its failure to provide fair warning, in advance, as to what conduct constitutes cause for removal.
In addition, unlike the cases relied upon by the majority which deal with other public officials, there is no provision in the Constitution or statutes of this State under which an appeal can be taken from an order of removal by the Court on the Judiciary. (Matter of Friedman, 19 A D 2d 120.) Although it is clear that there is no constitutional right to an appeal, it is precisely tMs lack of any review of the determinations of the Court on the Judiciary which does make it clear that the power of removal can be exercised arbitrarily. The vagueness of the provision under which removal can be effected is by itself sufficient to indicate that its application is a denial of due process. But, when the lack of any review of the removal order is added to the vagueness of the removal provision, the deprivation of due process is overwhelming. Furthermore, the fact that there are other, equally vague and, again, 1 ‘ traditional ’ ’ standards for the removal of other public officers is no answer to the fact that the standard before the court in tMs case is unquestionably so vague as to require the conclusion that its application to the claimant to accomplish his removal from office deprived him of due process. Although I would agree that the “ power of removal is designed to insure efficiency and fidelity in the discharge of official duty ’ ’, it must be pointed out that ‘ ‘ efficiency and fidelity ’ ’ may not constitutionally be achieved at the price of a citizen’s constitutional rights. The *548 difficulty, if not impossibility, which purportedly exists in devising a more precise standard can have no controlling effect on the disposition of the question of the constitutionality of the present standard, for it is clear that the entire Bill of Rights and the amendments to the Constitution inevitably make it more difficult for government to operate in a good many areas. In the area of removal of public officials such as Justices of the Supreme Court, there are additional and compelling reasons why the “ difficulties ” presented by due process should not be allowed to shunt due process aside in favor of “ efficiency ”: “ I need not dilate upon how critically the judicial arm of our great governing triumvirate might be weakened if Judges, of all persons, were deprived of the pattern of protection afforded by the due process, privileges and immunity clauses of the Federal Constitution, and which are so reassuring and fortifying to other citizens.” (Matter of Osterman, supra, 13 N Y 2d [a], [q1] [per Botein, J.].)
In addition to his contention as to the vagueness of the removal provision, claimant contends that the Court on the Judiciary so combined the disparate functions of Grand Jury, prosecutor, Judge and jury that he was denied a fair and impartial trial as required by the due process clause. The proceedings in the Court on the Judiciary followed an investigation involving disciplinary action against claimant’s brother, an attorney. The court, on the basis of information received from the Appellate Division, preliminarily, determined that the “ complaint ” stated facts sufficient to constitute cause for the preferral of charges. The court then directed that the charges be drawn and served on the claimant. It also appointed two attorneys to prosecute the charges and, in a document in the record, referred to these attorneys as ‘1 our attorneys ’ ’ and to the charges as “our charges.”* The court then heard the evidence, ordered the claimant’s removal and, without convening as a court, denied claimant’s motion to vacate the order of removal. A fair trial in a fair tribunal is, of course, fundamental to due process. In this regard, it is important to recognize that, in con *549 sidering the concept of a “ fair trial “ our system of law has always endeavored to prevent even the probability of unfairness ’ ’ and has not limited itself to preventing ‘ ‘ actual bias in the trial of cases.” (Matter of Murchison, 349 IT. S. 133, 136; Offutt v. United States, 348 TJ. S. 11, 14.) The majority apparently rejects claimant’s contentions on this point because the record does not reveal any clear evidence of actual bias. That, however, is not conclusive of the issue since the claimant has shown that the structure and procedure of the Court on the Judiciary inherently involves the probability of unfairness since it necessarily thrusts upon the members of the court the functions of Grand Jury and prosecutor in addition to its main function as trier of the facts. This is so despite the integrity and fairness of the members of the court (Schlesinger Appeal, 404 Pa. 584 [1961]; Mach v. Florida State Bd. of Dentistry, 296 F. Supp. 1259). It seems obvious that an elected Justice of the Supreme Court should be afforded the same structural and procedural safeguards as are available to other citizens. This court would not hesitate, I am sure, to strike down as a denial of due process a provision which would allow a bar association committee which investigates charges of professional misconduct against an attorney and which would also allow that same committee to prosecute and try those charges and impose discipline, just as the Pennsylvania Supreme Court did in Schlesinger Appeal, supra. In the face of the protection afforded to the attorney from such a procedure, can the approval of a procedure which denies the elected Justice that same protection be justified? The majority concludes that it can be, “ consonant with due process ”, and with that conclusion I cannot agree and, therefore, I would affirm the order .of the Appellate Division and remit the matter with directions to enter judgment for the claimant.
Chief Judge Fuld and Judges Bergan, Keating, Breitel and Jasen concur with Judge Scileppi; Judge Burke dissents and votes to affirm in a separate opinion.
Order reversed, without costs, and the case remitted to the Court of Claims for further proceedings in accordance with the opinion herein. Certified questions (1) and (2) answered in the affirmative and certified question (3) answered in the negative.

 I would merely note in passing that the majority’s parallel to a Judge assigning counsel to represent an indigent defendant is less than accurate. The parallel would be complete if that Judge, at the time he assigned counsel, also dictated what defenses or contentions counsel was to raise in behalf of the defendant.