83 N.Y.2d 663 (1994)
634 N.E.2d 966
612 N.Y.S.2d 365
The People of the State of New York, Respondent,
v.
Lamont Branch, Appellant.
Court of Appeals of the State of New York.
Argued March 24, 1994.
Decided May 12, 1994.
Linda Poust, New York City, and Philip L. Weinstein for appellant.
Charles J. Hynes, District Attorney of Kings County, Brooklyn (Thomas S. Burka and Roseann B. MacKechnie of counsel), for respondent.
Judges BELLACOSA, SMITH and LEVINE concur with Judge SIMONS; Judge TITONE dissents and votes to reverse in a separate opinion in which Chief Judge KAYE and Judge CIPARICK concur.
*665 SIMONS, J.
This appeal raises the question of whether the trial court abused its discretion when, during direct examination, it allowed the prosecutor to hold a brief private conference with a witness after that witness had given an unexpected and potentially damaging response. We hold that the trial court acted within its discretion in permitting such a conference to take place with appropriate safeguards.
Defendant was charged with murder and other crimes after Lushon Josephs was shot inside his Brooklyn apartment. A key prosecution witness was Thomas Edwards. In his statements to investigators and his testimony before the Grand Jury, Edwards said he had seen defendant carrying a gun when defendant entered the Josephs residence with two companions. He stated further that he heard a shot inside and then saw the three leaving, with defendant still armed.
At trial, however, Edwards changed his account. In response to a question from the prosecutor shortly after he took the stand, Edwards claimed that one of defendant's companions had been carrying the gun. Defendant, he said, was unarmed. The prosecutor immediately requested a bench conference, at which she asked for a brief recess to talk to Edwards. The prosecutor expressed her concern that Edwards had changed his statement at trial because he had been intimidated by defendant's family members outside the courtroom shortly before taking the stand. The court was advised that court officers  contrary to the court's instructions  had prevented Edwards from arriving through a private entrance and, as a result, Edwards was forced to enter through the public area, where the alleged contact with defendant's family took place.
Before ruling, the court allowed defense counsel to state and explain his objections. It then granted the recess and told both *666 attorneys that Edwards could be cross-examined without limitation about the recess and any conversation he had with the prosecutor during it. The attorneys agreed, at the request of defense counsel, that Edwards would be told that he was not required to speak to the prosecutor. After the recess, the jury was informed that the recess had been called to allow the prosecutor and the witness to meet.
Upon his return to the stand, Edwards changed his testimony and said that defendant had been carrying the gun. The prosecutor was prohibited by the court from fully exploring what had caused the earlier contradictory testimony. Instead, Edwards was allowed to say only that he was scared when he testified earlier. No reason for his fear was offered or allowed. Though defense counsel was free to cross-examine about the recess and conference, he chose not to do so. Nor did he request, as he could have, an opportunity to voir dire the conference participants about the content of the meeting prior to cross-examination. In his summation, however, defense counsel suggested that Edwards had changed his testimony because he had been coached during the meeting with the prosecutor.
Defendant was convicted of murder in the second degree, burglary in the first degree and criminal possession of a weapon in the second degree. On appeal, the Appellate Division affirmed, holding that the decision to allow the prosecutor's conference with Edwards was not an abuse of discretion. We now affirm.
There can be no question that once a witness takes the stand the truth-seeking function of a trial will most often be best served by requiring that the witness undergo direct questioning and cross-examination without interruption for counseling (see, Perry v Leeke, 488 US 272, 282; see also, People v Enrique, 80 N.Y.2d 869, affg on opn below 165 AD2d 13, 17; People v Narayan, 58 N.Y.2d 904). Indeed, a trial court may reject a request by a defendant to speak with his or her attorney during testimony despite the defendant's conceded right to counsel (see, Perry v Leeke, supra, at 284). Nonetheless, in rejecting the contention that trial courts must allow attorney-client conferences to testifying witnesses, the Supreme Court and our Court have been careful to note that trial courts may allow such conferences as a matter of discretion (see, id., at 284; see also, People v Enrique, 80 N.Y.2d 869, affg on opn below 165 AD2d 13, 22, supra). Though the Perry *667 line of cases dealt with midtestimony conferences involving defendants, we see no reason why the rules articulated in those cases should not apply generally to other witnesses, including the prosecution witness here (see, Perry v Leeke, supra, at 282).
Thus, the decision to grant a recess and to allow a conference between a lawyer and a testifying witness falls within the broad discretion allowed a trial court in its management of a trial. This Court, as a court of law, may reverse such decisions only for legal error, i.e., "the case presented shows no room for the exercise of * * * reasonable discretion" (Matter of Coombs v Edwards, 280 N.Y. 361, 364). We are not free to substitute our judgment for that of the trial court when conflicting facts and inferences reasonably support a decision for or against a certain result (see, Cox v Lykes Bros., 237 N.Y. 376, 382; Matter of Droege, 197 N.Y. 44, 53).
The Trial Judge in this case was confronted with the possibility that a witness was testifying falsely at the trial, thereby jeopardizing a criminal prosecution and exposing himself to perjury charges. Significantly, it was alleged that the witness was lying, not because of anything the prosecutor had done or failed to do, but because of a hallway confrontation that would not have occurred had court security personnel followed instructions. Faced with the need to make sure the court's truth-seeking function was not impaired  either by witness intimidation or by improper witness coaching by the prosecution  the court chose a sound middle path that allowed the People a chance to rehabilitate their case to some extent, yet fully protected both defendant's right to cross-examination and the jury's authority to make informed determinations as to facts and credibility. The court required that the witness be told that he was under no obligation to speak to the prosecutor, it informed the jury that the witness had been removed so that the prosecutor could confer with him and it barred the People from introducing any details about why Edwards changed his story other than the equivocal testimony that he was frightened. The two directly contradictory statements made under oath by Edwards remained on the record for the jury's consideration, both as a matter of credibility and as a matter of fact. Further, the court allowed the defense the opportunity to cross-examine the witness about the conference and about the change in testimony. The defense was also allowed, in summation, to urge the jury to *668 consider whether improper coaching might have caused the change in testimony.
In light of these safeguards undertaken to preserve both the truth-seeking function of trial and defendant's rights, we conclude that the trial court did not abuse its discretion. The dissent correctly points out that the trial court had at its disposal other means of dealing with this problem, including an in camera conference with the witness or simply leaving the People to impeach Edwards pursuant to CPL 60.35. Perhaps other Judges would have handled the matter differently, but that is not the standard of review on this appeal. The question is whether the Judge erred as a matter of law. In our view, the solution chosen here fell well within the broad scope of discretion allowed to a trial court.
Our decision today is consistent with decisions in other jurisdictions preserving the trial court's authority to allow midtestimony conferences between the prosecution and a witness when appropriate safeguards are in place. In United States v Malik (800 F.2d 143), a witness changed his testimony after a prosecutor routinely conferred with the witness during recesses without the court's authorization. The Seventh Circuit concluded there was no error. The court found it significant that "the jury [was] advised of the conversation and heard the witness make the correction subject to cross-examination by defense counsel" (800 F2d, at 149). In United States v De Jongh (937 F.2d 1), the First Circuit found no error where the prosecutor and a witness met privately between her direct testimony and cross-examination. The court noted that "the defense, the court, and the jury were fully informed of the meeting and its circumstances in ample time to assess their effect, if any, on [the witness's] credibility" (937 F2d, at 3). Similarly, in State v Delarosa-Flores (59 Wash App 514, 799 P2d 736, review denied 116 Wash 2d 1010, 805 P2d 814), a 67-year-old rape victim was allowed to confer privately with a prosecutor after she became anxious and gave an answer on direct examination that contradicted her pretrial statements. In finding no abuse of discretion, the Washington appellate court pointed out that if improper coaching did take place during the recess, the appropriate remedy was "[s]killful cross-examination" (59 Wash App, at 517, 799 P2d, at 738). Finally, in Frierson v State (543 NE2d 669), an Indiana appellate court found it proper for a trial court to allow a conference during direct testimony after a sexual assault victim became upset on the stand. As in Delarosa-Flores, the court held that the *669 opportunity to cross-examine protected defendant's rights fully.
Though a trial court's discretion is not boundless, these decisions, like Perry v Leeke and People v Enrique (supra), underscore the wisdom of leaving trial courts with broad discretion to determine when a conference is called for and when it is not. A midtestimony conference may be a strategic maneuver designed to frustrate the other side's case, or it may be an important step toward making sure a flustered witness does not inadvertently misstate the facts. The trial court is in the best position to distinguish between the two. Its ruling necessarily turns on judgments we, as an appellate court, cannot easily make from a cold record: the apparent condition of the witness, the possible motivation of the attorney, the likelihood of undue delay, and the probability that cross-examination will be an adequate remedy. To unduly limit a trial court's discretionary power in matters concerning trial management increases the likelihood that rigid rules will replace common sense and that the truth-seeking function of a trial will be impaired not advanced.
We have reviewed defendant's other arguments and find them without merit.
Accordingly, the order of the Appellate Division should be affirmed.
TITONE, J. (dissenting).
Relying on the limitations on our review power in cases involving trial court discretion, the majority has upheld a ruling permitting a prosecutor to conduct a private, midtestimony conference with a witness for the express purpose of questioning that witness about an unexpected and decidedly unfavorable turn in his testimony. In my view, however, the ruling fell well outside the permissible range of trial court discretion, since the risk of interference with the truth-seeking process was high and there were no countervailing considerations to justify this extraordinary departure from accepted courtroom practice. Accordingly, I dissent.
The majority begins its analysis with the premise that off-record midtestimony conferences with witnesses are generally permissible, subject to the trial court's discretion. In support, the majority relies in part on Perry v Leeke (488 US 272) and People v Enrique (80 N.Y.2d 869, affg 165 AD2d 13). However, both of those cases involved situations in which the trial court had refused to permit a conference between a defendant and *670 defense counsel and the only question before the appellate court was whether the ruling violated any constitutional or procedural rights that the defendant may have had (see also, People v Narayan, 58 N.Y.2d 904).
Manifestly, there is a significant difference between those cases and this one, where a midtestimony conference between a prosecutor and her witness was permitted. Unlike this situation, cases involving a midtrial conference between the defendant and defense counsel implicate the defendant's constitutional right to the assistance of counsel (see, Perry v Leeke, supra, at 284; see also, Geders v United States, 425 US 80). Indeed, the entire focus of the analyses in Perry and Enrique was whether the trial courts' decisions to disallow defense consultation violated that constitutional right (see also, People v Narayan, supra).
Both Perry and Enrique held only that, in the circumstances presented, the constitutional right to counsel did not obliterate the discretionary power of the trial court to forbid midtestimony conferences in order to protect the truth-seeking process. Neither case may fairly be cited for the proposition that off-the-record conferences with witnesses are generally permissible as a matter of State or Federal law.
Inasmuch as there are no New York cases affirmatively approving midtestimony conferences with nondefendant witnesses (cf., People v Gonzalez, 27 N.Y.2d 53, 58, cert denied 400 US 996), the issue presented here should be approached as a matter of first impression. Viewed in that light, there is no particular, precedentially supported reason to treat the question as one that falls within the broad, virtually unguided discretion of the trial court, as the majority assumes. Since we are writing on a clean slate and without direct constitutional constraint, our primary focus should be on fashioning a rule that would most effectively advance the truth-seeking process.
The majority seems to proceed from the premise that midtestimony conferences between witness and prosecutor may be helpful to that process, provided that full cross-examination to uncover any improper coaching is available. The majority's premise, however, runs counter to the common law's traditional mistrust of private, midtestimony consultations between witnesses and attorneys. That mistrust was recognized in Perry v Leeke (supra, at 281, 282), in which the Court stated that "[i]t is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties," *671 since midtestimony consultations by witnesses can impede "the truth-seeking function of the trial" in several ways, including "unethical `coaching'." The potential for impairment of the truth-seeking process was also recognized in People v Enrique (supra), in which it was cited as a basis for upholding a trial court decision to ban consultation between a defendant and his attorney during a luncheon recess.
Indeed, it is this very concern, i.e., that midtestimony consultations are inimical to the truth-seeking process, that has heretofore been used to rationalize most curtailments of what would otherwise be treated as a defendant's absolute right to the advice of counsel during every stage of the proceeding (Perry v Leeke, supra; Geders v United States, supra; People v Enrique, supra). It is ironic (and more than a little troubling) that now  in a case where the defendant's right to the assistance of counsel is not at stake and the person whose testimony was interrupted is witness for the prosecution  the Court has decided to take the position that midtestimony conferences can enhance, rather than undermine, the search for the truth.
Contrary to the view adopted by the majority, which relies heavily on decisions from other jurisdictions, I would adopt for our courts a view suggested in another out-of-State case, People v Pendleton (75 Ill App 3d 580, 595, 394 NE2d 496, 507), in which it was observed that midtestimony discussions between prosecutors and their witnesses "pose a tantalizing potential for misconduct" and thus "they are to be strictly scrutinized." Under my view, trial courts would have some discretion to permit the suspect practice, but their discretion would be narrowly circumscribed and would be subject to review under one or more specific criteria.
The criterion that most readily comes to mind is that of necessity. Since the procedure in question is one that threatens the integrity of the truth-finding process, it should not be permitted until at least a threshold showing of need has been made. In most cases, of course, there are alternative, less perilous methods for remedying apparent reversals in a prosecution witness's story. In situations involving recanting non-party witnesses, CPL 60.35 permits the prosecutor to impeach with certain of the witness's prior inconsistent statements if that witness has "give[n] testimony upon a material issue of the case which tends to disprove the position of such party" (subd [1]). It is true that the case law has established a *672 relatively stringent standard as a predicate for invoking this provision (see, e.g., People v Saez, 69 N.Y.2d 802; People v Fitzpatrick, 40 N.Y.2d 44). However, the difficulty of using the legislatively created procedure for challenging a witness's eleventh-hour change of position on the record does not furnish a persuasive reason for permitting a prosecutor to cajole the witness into changing position in a private, off-record conference.
Moreover, in those rare cases where the rules for impeaching one's own witness are genuinely too austere to fit the situation (see, State v Delarosa-Flores, 59 Wash App 514, 799 P2d 736, cited by majority opn, at 668; Frierson v State, 543 NE2d 669 [Ind], cited by majority opn, at 668) there are ordinarily other, less troubling remedies than a private, unmonitored discussion between the prosecutor and the witness. Presumably, the prosecutor can request an in camera conference in which the reasons for the witness's change of heart can be explored in the presence of a Judge, a stenographer and even opposing counsel where appropriate (see, e.g., United States v Adams, 785 F.2d 917; Kingery v State, 523 So 2d 1199 [Fla]). Since there is no attorney-client relationship and no privilege to be guarded, there is no justification for affording a conference between prosecutor and witness the same degree of privacy that is afforded when a defendant and defense counsel confer. It is the element of privacy that creates the opportunity for coaching and tampering, and, thus, courts should be directed to exercise their discretion so as to avoid unsupervised and unmonitored midtestimony colloquies unless no other practical option exists.
Viewed in light of these principles, the ruling challenged in this case can only be viewed as reversible error. When the testimony of Thomas Edwards, a critical prosecution witness, proved to be unexpectedly favorable to the defense, the trial court permitted the prosecutor to confer with her witness, in private, for the expressed purpose of affecting the substance of that witness's testimony on a crucial point (cf., Frierson v State, 543 NE2d 669, supra [conference permitted to enable prosecutor to determine whether witness was too upset to continue]). However, apart from the prosecutor's convenience and her partisan desire to remedy a sudden hole in her case in the most expeditious and least risky manner possible, there was no sound judicial reason  or, for that matter, any reason at all  for allowing such a drastic departure from the ordinary rules of courtroom practice. Edwards was not the prosecutor's *673 "client" so that he had a cognizable interest in obtaining midtestimony legal advice; nor was he a defendant with a constitutional right to the assistance of counsel. The only other possible countervailing interest, ensuring truthful testimony, could have just as readily been served through the use of less troublesome alternatives, such as an in camera inquiry in the presence of the court and counsel or even impeachment under CPL 60.35. The resort to a private conference, a practice that has long been regarded as inimical to the interests of truth finding, was clearly erroneous and cannot be condoned.
Unlike the majority, I would also reject the People's contention that reversal is not required in cases such as this one because the danger of prejudice can be dissipated by the availability of cross-examination to determine whether the witness has been coached or otherwise influenced. While perhaps superficially appealing, the argument is ultimately disingenuous because it places an unfair and unnecessary burden on the defense.
Although cross-examination has been dubbed "the greatest legal engine ever invented for the discovery of truth" (5 Wigmore, Evidence § 1367 [Chadbourn rev 1974], cited in Perry v Leeke, supra, at 283, n 7), it is not without pitfalls for the party who wishes to use it. Every experienced trial lawyer knows that each question posed to an opponent's witness carries a risk that the answer will be harmful in some unanticipated way. Additionally, despite the value of cross-examination for uncovering truth, there is always the possibility that a skillful or well-coached witness will be able to evade its searching light. While such pitfalls may be inevitable in our necessarily imperfect truth-finding system, it is fundamentally unfair to force the defense to assume the burdens and risks of cross-examination when it was a flaw in the People's case that prompted resort to an unorthodox courtroom procedure.
If, as the People contend, cross-examination in the presence of the jury is the most effective method we have for ferreting out the truth, the proper solution for uncovering the truth when a prosecution witness testifies in a surprising and unfavorable way would seem to be cross-examination of that witness by the People under CPL 60.35. The People may well be unsatisfied with that option and instead prefer the more comfortable route of a private, midtestimony conference. However, if that is the case, they should not be heard to argue *674 that the defendant should be satisfied to remedy any resulting prejudice by relying on the same right of cross-examination that they have eschewed.
Finally, I would stress my disagreement with the majority's view that rulings of this sort cannot be challenged in our Court, a court of law, because they fall within the realm of trial court discretion. Our nisi prius courts undoubtedly enjoy a tremendous latitude in managing the courtroom and in directing the details of trial. However, that discretion is not unlimited. Rather, it must be exercised within a framework of legal rules, criteria and general principles, all of which are within this Court's proper purview. Indeed, far from being an area that we should shun, the functions of line drawing and establishing criteria for the exercise of discretion are squarely within our responsibilities as the State's highest court.
Where the management of the examination of witnesses is concerned, the trial court's discretionary rulings should be informed by a concern for the integrity of the truth-seeking process. When, as here, a trial court permits a procedure that carries a clear potential for distorting the truth and there is no identifiable countervailing reason for taking that risk, the ruling cannot be upheld on the theory that it was within the permissible range of discretion. Accordingly, I would hold that the trial court in this case committed an error of law and that the resulting judgment must be reversed.
Order affirmed.